IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

YVONNE THOMAS, : CIVIL ACTION NO.
: 1:19-CV-2430-MLB-JSA
Plaintiff, :
:
v. :
:
ROCKDALE COUNTY, *et al.*, : **FINAL  REPORT  AND**
: **RECOMMENDATION ON A MOTION**
Defendants. : **FOR SUMMARY JUDGMENT**

Plaintiff Yvonne Thomas filed the above-captioned action on May 28, 2019.

On August 13, 2019, Plaintiff filed an Amended Complaint [13] and on

September 3, 2019, Plaintiff filed a Second Amended Complaint [25] with the

consent of Defendants. In the Second Amended Complaint, Plaintiff asserts claims

against Defendants Rockdale County, Rockdale County Magistrate Court Chief

Magistrate Judge Phinia Aten ("Judge Aten"), and Dedra Hall ("Hall"). Plaintiff

alleges that she was jointly employed by Defendants Rockdale County and Judge

Aten, and during her employment she was subjected to sexual harassment and

unlawful retaliation, in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. §§ 2000e, *et seq*. Plaintiff also asserts state-law claims of

assault and battery against Defendant Hall.

The action is before the Court on the Motion for Summary Judgment [105]

filed by Judge Aten, and the Motion for Summary Judgment [106] filed by Rockdale

County ("the County"). For the reasons discussed below, the undersigned **RECOMMENDS** that Judge Aten's Motion for Summary Judgment [105] be **GRANTED IN PART, DENIED IN PART**, and **RECOMMENDS** that the County's Motion for Summary Judgment [106] be **DENIED**.

## I.    FACTS

Unless otherwise indicated, the Court draws the following facts from the Defendants' "Joint Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried" [105-2][106-2] ("Def. SMF"), Plaintiff's "Statement of Additional Material Facts to Which There Is a Genuine Issue to Be Tried" [117-2] ("Pl. SMF"), and their associated exhibits. Some facts may also be taken from Plaintiff's "Response to Defendants' Statement of Undisputed Material Facts" [117-1] ("Pl. Resp. SMF") and Defendants' "Joint Response to Plaintiff's Statement of Additional Material Facts to Which There Is a Genuine Issue to Be Tried" [124] ("Def. Resp. SMF"). As indicated and as needed for clarity, the Court may also draw some facts directly from other material in the record. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

For those facts submitted by Defendants that are supported by citations to record evidence, and for which Plaintiff has not expressly disputed with her own citations to record evidence, the Court must deem those facts admitted, pursuant to

Local Rule 56.1(B). *See* LR 56.1(B)(2)(a)(2), NDGa ("This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1)."). Accordingly, for those facts submitted by Defendants that Plaintiff has failed to dispute with citations to record evidence, the Court must accept the facts as true, so long as the facts are supported by citations to record evidence, do not make credibility determinations, and do not involve legal conclusions. *See E.E.O.C. v. Atlanta Gastroenterology Assocs., LLC*, No. CIV. A. 1:05-CV-2504-TWT, 2007 WL 602212, at *3 (N.D. Ga. Feb. 16, 2007).

The Court has also excluded assertions of fact by either party that are clearly immaterial, or presented as arguments or legal conclusions, and has excluded assertions of fact unsupported by a citation to admissible evidence in the record or asserted only in a party's brief and not in its statement of facts. *See* LR 56.1(B)(1), NDGa ("The court will not consider any fact: (a) not supported by a citation to evidence . . . or (d) set out only in the brief and not in the movant's [or respondent's] statement of undisputed facts."); *see also* LR 56.1(B)(2)(b) (respondent's statement

of facts must also comply with LR 56.1(B)(1)). The Court has nevertheless viewed all evidence and factual inferences in the light most favorable to Plaintiff, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).

Judge Aten is the Chief Magistrate of Rockdale County Magistrate Court ("Magistrate Court"). Def. SMF at ¶ 2; Pl. SMF at ¶ 1. In September of 2017, Plaintiff Yvonne Thomas applied for a job through the Rockdale County website, and applied specifically for the position of Deputy Clerk II with the Rockdale County Magistrate Court. Def. SMF at ¶ 1; Pl. SMF at ¶¶ 4-5. Plaintiff was initially contacted by Claudette Rancifer with Rockdale County Talent Management, who asked if Plaintiff was still interested in the Deputy Clerk II position. Def. SMF at ¶ 3. Plaintiff then interviewed with Magistrate Court Clerk Mallory Minor, and later with Judge Aten. Def. SMF at ¶¶ 4, 9.

During the application process, Plaintiff was told that the Deputy Clerk II position was unavailable and that only an on-call administration position was available. Def. SMF at ¶ 10. According to Defendants, Judge Aten offered Plaintiff the position as an on-call administrator in the Magistrate Court. Def. SMF at ¶ 12; Aten Dep. [119] at 41-42. Plaintiff, however, contends that she received an offer

letter from Ms. Rancifer on Rockdale County letterhead, and it included a date for Rockdale County orientation. Pl. Resp. SMF at ¶ 12; Pl. SMF at ¶ 13; Holmes Dep. [118] at 19-20; Pl. Dep. [109] at 24. Ms. Rancifer advised Plaintiff that the on-call administrator position was a part-time position, in which Plaintiff could transfer or float within Rockdale County. Def. SMF at ¶ 13; Pl. SMF at ¶¶ 7, 11 29. Plaintiff was also advised that she could apply for promotions within Rockdale County. Pl. SMF at ¶ 10.

Plaintiff contends that the "on-call administrator" position is not specific to the Magistrate Court, and the County has on-call administrators in many parts of the County. Pl. SMF at ¶ 8; Holmes Dep. at 28-29. Defendants contend, however, that while the "on-call administrator" position is a "generic title that the County uses," the individual departments determine the roles and responsibilities of the position in the departments. Def. Resp. SMF at ¶ 8; Holmes Dep. at 28-29.

On or about November 6, 2017, Plaintiff began her employment as a part-time on-call administrator with the Magistrate Court. Def. SMF at ¶¶ 21-22. Plaintiff was given an employee handbook from Rockdale County, attended orientation for Rockdale County employees where she was trained on Rockdale County employment policies and procedures, was paid by Rockdale County, and received employment benefits from Rockdale County. Pl. SMF at ¶¶ 14-15, 25-26. Plaintiff contends that she was "told by County HR" that she was guaranteed that 29 hours

per week would be available to her at the Magistrate Court. Def. SMF at ¶ 14; Pl. SMF at ¶ 24. The written job description for on-call administrators indicates employees work "on an as-needed basis with no established or on-going work schedule." Def. SMF at ¶ 15.

Prior to Judge Aten's becoming Chief Magistrate on January 1, 2013, Magistrate Court employees were placed under Rockdale County's civil service system, and employees of the Magistrate Court are required to follow the general employment policies of Rockdale County. Def. SMF at ¶¶ 23-24; Pl. SMF at ¶¶ 16, 18, 19, 30, 36. Judge Aten has additional oral policies that do not conflict with the policies of Rockdale County, which Magistrate Court employees and staff are also expected to follow. Def. SMF at ¶ 24. Rockdale County has policies such as those regarding appropriate work attire, performance of duties, behavior, non-discrimination and anti-harassment, discipline, leave, grievances, and separation. Def. SMF at ¶ 25; Pl. SMF at ¶¶ 18-19. The complaint procedure for allegations involving harassment, discrimination, or retaliation requires an employee to report any to their immediate supervisor, the Director of Human Resources, or any member of Human Resources. Def. SMF at ¶ 26; Pl. SMF at ¶¶ 21-22, 28. Judge Aten could perform performance reviews and was responsible for any pay increases. Def. SMF at ¶ 27.

During Plaintiff's time at Magistrate Court, Plaintiff was initially trained by Magistrate Court Clerk Mallory Minor and also received instruction from Judge Aten and Patricia Carreker, Judge Aten's Judicial Assistant. Def. SMF at ¶¶ 4, 20, 28. Ms. Minor was to train Plaintiff to perform a non-essential scanning project. Def. SMF at ¶ 29. According to Judge Aten, Plaintiff's only responsibility was to scan old, closed files, unless given a specific instruction by Ms. Minor to perform another task. Def. SMF at ¶ 30; Aten Dep. at 89-92, 110-20. Plaintiff disputes that, and contends that she was trained on various other tasks by Ms. Minor. Pl. Resp. SMF at ¶ 30; Pl. Dep. at 24-27, 87. The purpose of the scanning project was because the Magistrate Court had a hybrid system, meaning paper files and e-filing, and sometimes customers would need information from the files. Def. SMF at ¶ 31. Scanning the old files allowed the files to be moved off-site, creating more space in the small office. Def. SMF at ¶ 32. Magistrate Court clerks went through special training in what information could and could not be given to the public. Def. SMF at ¶ 33. Judge Aten has an oral policy that no Magistrate Court employee is to answer the phone unless specifically told to do so. Def. SMF at ¶ 34.

According to Defendants, Plaintiff's immediate supervisor was initially Ms. Minor, then after Ms. Minor left, Ms. Carreker became Plaintiff's immediate supervisor. Def. SMF at ¶ 35; Aten Dep. at 112. Plaintiff disputes that and contends that she understood that her direct supervisor was Judge Aten. Pl. Resp. SMF at ¶ 35;

Pl. Dep. at 33. Plaintiff's schedule would be discussed and agreed upon by Plaintiff and either Ms. Minor or Ms. Carreker. Def. SMF at ¶ 36. Plaintiff's hours at Magistrate Court varied. Def. SMF at ¶ 37. Although Plaintiff does not dispute that, she contends that her hours were 8:30 a.m. to 2:30 p.m. Monday through Thursday and every other Friday. Pl. SMF at ¶ 38; Pl. Dep. at 33.

According to Plaintiff, during her time at Magistrate Court, she worked with six others, not including Judge Aten. Def. SMF at ¶ 39. Defendant Dedra Hall estimated that a maximum of eleven individuals, excluding Judge Aten, worked at Magistrate Court during the time Defendant Hall was assigned as a bailiff. Def. SMF at ¶ 40. The Rockdale County Board of Commissioners ("BOC") has budgeted 10-13 employees for the Magistrate Court. Def. SMF at ¶ 41. Judge Aten has two to three part-time Magistrate Judges who she appoints for four-year terms. Def. SMF at ¶ 42.

On or about November 15, 2017, Plaintiff made an error in entering a warrant. Def. SMF at ¶ 43. Plaintiff informed Ms. Minor of the error and Ms. Minor advised Plaintiff that she would have to let Judge Aten know of the error. Def. SMF at ¶ 44. The following day, Plaintiff went to the courtroom to help Ms. Minor, but Plaintiff did not have the court calendar and handed the incorrect case file to Judge Aten. Def. SMF at ¶¶ 45-46. Plaintiff was told that she was no longer allowed to handle warrants, greet customers, or answer phones. Def. SMF at ¶ 47. In January of 2018,

Judge Aten witnessed Plaintiff interacting with customers and told Plaintiff not to interact with customers any longer. Def. SMF at ¶ 48.

Judge Aten expected any on-call administrators to arrive at a time previously discussed and approved by either the clerk of court or the judicial assistant. Def. SMF at ¶ 49. Plaintiff was late on several occasions and changed her schedule on multiple occasions. Def. SMF at ¶ 50. Judge Aten prefers to speak personally with employees about any disciplinary issues, instead of using a progressive discipline system, although she admits that she uses progressive discipline "to some extent." Def. SMF at ¶ 51; Pl. Resp. SMF at ¶ 51; Aten Dep. at 137-38. Judge Aten recalled speaking with Plaintiff at some point about dressing appropriately and not showing "hickies." Def. SMF at ¶ 60.

At all relevant times, Defendant Hall was employed by Rockdale County Sheriff's Office, working as a bailiff in the Magistrate Court. Def. SMF at ¶ 56. In 2014 or 2015, Defendant Hall was appointed by the Rockdale County Sheriff to serve as a bailiff in Judge Aten's courtroom. Def. SMF at ¶ 57. As a courtesy, the Rockdale County Sheriff allows judges to give input on whether they want a deputy as a bailiff. Def. SMF at ¶ 58. The Rockdale County Sheriff requires that any deputies requested by a judge must be working in courtroom services or that the judge convince another deputy to switch assignments. Def. SMF at ¶ 59.

On February 14, 2018, Valentines Day, Plaintiff had received Valentines gifts from her fiancé and left the gifts on the front desk, her work area. Pl. SMF at ¶ 39; Pl. Dep. at 43-44. Judge Aten's bailiff, Defendant Dedra Hall, came to the records room asking about the gifts and asking, "where did you get all that from, what's going on," but Plaintiff didn't respond because another co-worker was in the office with her, Michelle Dunn. Pl. SMF at ¶ 39. Plaintiff told Defendant Hall, "I am engaged," and Defendant Hall said, "Oh, I didn't know that you were engaged, what did you do to get all that, did you drop to your knees, what's going on, what you doing to that man, I want to get some of that." Pl. SMF at ¶ 39. Defendant Hall asked to see Plaintiff's ring, and when Plaintiff took the ring off her finger and gave it to Defendant Hall, she looked at the ring, commented that it was similar to hers, gave it back to Plaintiff, and said, "oh, you must be doing something good, you dropped to your knees, what you doing to that man to get all that, what's going on, Michelle, cover up your ears." Pl. SMF at ¶ 39; Def. SMF at ¶ 54; Pl. Dep. at 43-44.

Plaintiff also contends that Defendant Hall made allegedly inappropriate comments about Plaintiff having hickies to Plaintiff on or about February 14, 2018. Def. SMF at ¶ 52. Plaintiff alleges that on February 14, 2018, Defendant Hall said to her, "what you doing to that man, you got hickies" and "what you doing to him, I want to get some of that." Def. SMF at ¶ 53. Defendant Hall's actions on Valentines

Day made Plaintiff uncomfortable, and she found the comment disgusting. Pl. SMF at ¶ 40.

On or around February 20, 2018, Defendant Hall asked to see Plaintiff's fingernail polish and made "sexual gestures" with her fingers on Plaintiff's hand and around her ring. Def. SMF at ¶ 55; Pl. SMF at ¶ 41. Plaintiff contends that Defendant Hall also started to greet her by "grabbing her and hugging her in a breast-to-breast hug" starting in late February of 2018. Pl. SMF at ¶ 42; Pl. Dep. at 52-53. On February 21, 2018, Plaintiff requested a meeting with Judge Aten. Def. SMF at ¶ 61. In the email, Plaintiff did not state that she was being sexually harassed by Defendant Hall. Def. SMF at ¶ 62. Plaintiff did not mention possible sexual harassment to Judge Aten until after April 12, 2018. Def. SMF at ¶ 63.

Plaintiff alleges that, on April 12, 2018, "Deputy Hall barged into Plaintiff's office" and said, "I can't stand them two [co-workers]" and threatened to "pay somebody to whip they ass . . . [or] shoot them." Pl. SMF at ¶ 43; Pl. Dep. at 55-61. According to Plaintiff, Deputy Hall then put her hand into Plaintiff's dress and started caressing Plaintiff's breast with her hand & fingers. Pl. SMF at ¶ 43; Pl. Dep. at 55-61. Although Plaintiff said "no" and pulled back, Deputy Hall put her hand down Plaintiff's dress again and started groping both of Plaintiff's breasts. Pl. SMF at ¶ 43; Pl. Dep. at 55-61. Plaintiff tried to button the dress, and Deputy Hall said, "Don't button that," and groped her a third time, exposing Plaintiff's breasts. Pl.

SMF at ¶ 43; Pl. Dep. at 55-61. Plaintiff contends that she then left the room, she "felt sick and scared," and that "DaVincia," the co-worker who was present, told her, "oh, my God, oh, my gosh, you were right, she is, she wants you, she wants you, she had your fucking titties out, I seen all your titties, Ms. Yvonne." Pl. SMF at ¶¶ 44-45; Pl. Dep. at 59, 61.

Shortly thereafter, on April 12, 2018, Plaintiff called Neni Valentine with the County Human Resources[1] and made a complaint of sexual harassment against Defendant Hall, stating that Hall had groped her breasts. Pl. SMF at ¶ 46; Def. SMF at ¶¶ 64-65. Ms. Valentine asked Plaintiff if she was leaving her job, and Plaintiff told her that she was coming back and wanted her job. Pl. SMF at ¶ 47; Pl. Dep. at 70. Ms. Valentine also asked Plaintiff to put her allegations in writing. Def. SMF at ¶ 66; Pl. SMF at ¶ 48.

Judge Aten received a phone call from Rockdale County Talent Management in the late afternoon of April 12, 2018, regarding Plaintiff's complaint of sexual harassment against Defendant Hall. Def. SMF at ¶ 67; Pl. SMF at ¶ 49. Ms. Valentine also called Magistrate Court and set a time to meet with Davincia

---

[1] Defendants identify Ms. Valentine as working in "Rockdale County Talent Management." Def. SMF at ¶ 64. Although it is not entirely clear, "Talent Management" appears to be the term used by Rockdale County for its human resources department, as Plaintiff refers to "County HR," while Defendants refer to "Talent Management." *See*, *e.g.*, Def. SMF at ¶ 64; Pl. SMF at ¶ 46.

Thurmon, who had allegedly witnessed the incident between Plaintiff and Defendant Hall, and a time to meet with Defendant Hall. Def. SMF at ¶ 68. Judge Aten set a meeting with Ms. Holmes, Director of Talent Management, for the following day, April 13, to discuss what needed to be done to keep Plaintiff and Defendant Hall separated. Def. SMF at ¶ 69; Pl. SMF at ¶¶ 54-55.

On April 12, 2018, Plaintiff sent a written statement in an email to Ms. Valentine.[2] Pl. SMF at ¶ 48; Def. SMF at ¶ 70; Pl. Dep., Ex. 1, 1A. In Plaintiff's statement, she stated that, although she wanted to keep her job as an on-call administrator, she did not know if she could work in the same department as her alleged harasser. Def. SMF at ¶ 71. Plaintiff also stated that her "family and friends" wanted her to transfer to another department "for fear of retaliation and hostility" toward Plaintiff. Def. SMF at ¶ 72; Pl. Dep., Ex. 1 (Plaintiff's email states: "My family and friends suggest I transfer to another department for fear of retaliation and hostility towards me."). While Plaintiff does not dispute this, she contends that she "specifically and consistently requested that she be placed back in the Magistrate Court." Pl. Resp. SMF at ¶ 72; Pl. Dep. at 77 ("I told [Talent Management Director Toni Holmes] I wanted to go back to my job."). Plaintiff also informed Ms. Valentine

---

[2] Defendants contend that Plaintiff sent a written statement in an email to Ms. Valentine on April 13, 2018. Def. SMF at ¶ 70; Pl. Dep. Ex. 1, 1A.

that she planned a "tentative return to work" on Wednesday, April 18, 2018. Def. SMF at ¶ 73; Pl. SMF at ¶ 53.

As Judge Aten was waiting for her meeting with Talent Management on April 13, 2018, she was met by an investigator with the Sheriff's Office. Def. SMF at ¶ 77. Judge Aten was told that Plaintiff had requested that she be removed from Magistrate Court and moved to a Rockdale County department. Def. SMF at ¶ 78. While Plaintiff does not dispute this, she contends that it was Toni Holmes who told Judge Aten that Plaintiff did not want to return to Magistrate Court. Pl. SMF at ¶ 57; Aten Dep. at 162-63. Judge Aten also learned that both Rockdale County Talent Management and the Rockdale County Sheriff's Office intended to investigate Plaintiff's claim of harassment. Def. SMF at ¶ 79; Pl. SMF at ¶¶ 50-51. Because of the multiple investigations already being performed, Judge Aten decided not to launch her own independent investigation. Def. SMF at ¶ 80; Pl. SMF at ¶ 52.

Ms. Valentine obtained written statements from Ms. Thurmon and a brief statement from Defendant Hall before Defendant Hall invoked her "*Garrity* rights." Def. SMF at ¶ 74; Pl. SMF at ¶ 69. Defendant Hall contacted her supervisor and the Sheriff's Office began an internal investigation. Def. SMF at ¶ 75. At the time, Defendant Hall was not removed by the Sheriff from her position as a bailiff. Def. SMF at ¶ 76.

On April 16, 2018, Plaintiff contacted an investigator at the Equal Employment Opportunity Commission ("EEOC") who recommended Plaintiff go back to her job and work with Defendant Hall and report her complaint again. Def. SMF at ¶ 83. On April 16, 2018, Plaintiff also complained that Judge Aten created a "hostile work environment" because of "rude abrasive communication techniques, used to humiliate, disrespect, and undermine work assignments, processes and procedures." Def. SMF at ¶ 84. Plaintiff further contended that Judge Aten would not allow Plaintiff equal job training. Def. SMF at ¶ 85. On April 16, 2018, Plaintiff also sent an email to Judge Aten informing her for the first time that Plaintiff had allegedly been sexually harassed and indicating that Plaintiff would return to Magistrate Court on April 23, 2018. Def. SMF at ¶ 86; Pl. SMF at ¶ 58. After April 12, 2018, however, Plaintiff never again worked in the Magistrate Court, although there was plenty of scanning work that remained that she could have completed. Pl. SMF at ¶¶ 59-60; Aten Dep. at 216. County HR never discussed the possibility of Plaintiff's returning to Magistrate Court to continue doing the scanning work. Pl. SMF at ¶ 63.

Judge Aten did not have Plaintiff removed from Magistrate Court. Pl. SMF at ¶ 62; Aten Dep. at 214. Instead, Judge Aten contacted Talent Management Director Toni Holmes to discuss Plaintiff's return to Magistrate Court. Def. SMF at ¶ 87.

Plaintiff met with Ms. Holmes on April 18.[3]  Def. SMF at ¶ 88; Pl. SMF at ¶ 71; Pl. Dep. at 77-78. According to Defendants, Ms. Holmes recommended that Plaintiff not return to Magistrate Court due to her complaints about Defendant Hall, a sheriff's deputy, and Judge Aten. Def. SMF at ¶ 89; Pl. SMF at ¶ 68; Pl. Dep. at 77; Holmes Dep. at 120-21. Plaintiff, however, contends that Ms. Holmes did more than recommend that Plaintiff not return to Magistrate Court, she made the decision for Plaintiff, although Plaintiff expressly requested to return to her job in the Magistrate Court. Pl. Resp. SMF at ¶ 89; Pl. SMF at ¶¶ 66-67, 71-72; Pl. Dep. at 77-78 ("I told Director Holmes I wanted to go back to my job. . . . Director Holmes informed me that that was not her recommendation, that she was going to find particular other departments for me to work in, but she didn't think it would be a good idea for me to go back."). Plaintiff also advised Ms. Holmes that there was an on-call administration position in the Juvenile Court to which she could transfer, and Ms. Holmes said that she would look into it. Pl. SMF at ¶ 74.

On April 17, 2018, Ms. Holmes advised Judge Aten that she had discussed assignments at Rockdale County with Plaintiff and that Plaintiff did not want to return to the Magistrate Court. Def. SMF at ¶ 91. Judge Aten had no further contact

---

[3] While Plaintiff contends that she met with Ms. Holmes on April 18, 2018, Defendants contend that Plaintiff actually spoke with Ms. Holmes on April 17. Def. SMF at ¶ 88; Pl. SMF at ¶ 71; Pl. Dep. at 77-78.

with Plaintiff and did not discuss Plaintiff's complaint or allegations, except with investigators. Def. SMF at ¶ 92.

On April 20, 2018, Plaintiff emailed Ms. Holmes requesting to be returned to Magistrate Court on April 25, 2018, as an on-call administrator "until other departments" had need of Plaintiff. Def. SMF at ¶ 102; Pl. SMF at ¶ 75. A meeting between Plaintiff and Jennifer Rutledge at the Rockdale County Board of Commissioners ("BOC") was set for 11:00 a.m. on April 25, 2018. Def. SMF at ¶ 103. On April 25, 2018, Plaintiff filed an official grievance with Rockdale County against Defendant Hall and Judge Aten. Def. SMF at ¶ 104. Thereafter, on April 27, 2018, Plaintiff started working a temporary position with the BOC, working four hours a week covering for a receptionist on a lunch break. Def. SMF at ¶ 105; Pl. SMF at ¶ 77. Rockdale County Personnel Action Form listed Plaintiff's move from the Magistrate Court to the BOC as a "transfer" and not a new hire. Pl. SMF at ¶ 78. Judge Aten was not aware of where Plaintiff had been placed or the hours Plaintiff was assigned to work. Def. SMF at ¶ 106.

On April 30, 2018, Plaintiff again emailed Ms. Holmes thanking her for the job with the BOC, but asking that she be allowed to work the on-call administrator position with Juvenile Court that she discussed when she met with Ms. Holmes on April 18. Pl. SMF at ¶ 79. Ms. Holmes could not remember if she did anything regarding placing Plaintiff in the on-call administrator position with Juvenile Court,

but she admitted that there was no documentation showing that she contacted Juvenile Court on behalf of Plaintiff. Pl. SMF at ¶ 80.

On or about May 8, 2018, Plaintiff filed a complaint of sexual harassment with the U.S. Equal Employment Opportunity Commission ("EEOC"). Def. SMF at ¶ 107; Pl. SMF at ¶ 81. Notice of Plaintiff's EEOC complaint was sent to the County in June of 2018. Def. SMF at ¶ 108. On September 9, 2018, Rockdale County filed a position statement with the EEOC, and in its statement Rockdale County made no distinction between the employees of the Magistrate Court and employees of Rockdale County. Pl. SMF at ¶ 91.

On May 11, 2018, a position at the Water Department with more available hours was found for Plaintiff, but Plaintiff indicated she was unavailable to start until June 1 because of childcare issues. Def. SMF at ¶ 109; Pl. SMF at ¶ 82. On May 15, 2018, Plaintiff advised Ms. Holmes that she could work 20 hours over 3 days per week or 18 hours at 6 hours per day. Def. SMF at ¶ 110; Pl. Dep., Ex. 4. On May 16, 2018, Ms. Holmes asked Plaintiff if she would be willing to work in any other departments, since she was unavailable for work with the Water Department, and Plaintiff replied that she would be able to work for the Water Department at specific days and times. Def. SMF at ¶¶ 111-12. Plaintiff met with Teresa Jacobs, a supervisor in the Water Department, and they worked out a schedule based on Plaintiff's availability. Def. SMF at ¶¶ 113-14.

On June 4, 2018, Plaintiff sent Ms. Holmes a note from her health care provider advising her that Plaintiff would be out of work from June 4, 2018, until July 16, 2018, for intensive outpatient treatment. Def. SMF at ¶ 115. Plaintiff's return date was later extended to July 23, 2018. Def. SMF at ¶ 116. When Plaintiff indicated that her treatment was coming to an end, Ms. Holmes advised Plaintiff that she would ask departments about jobs and also advised Plaintiff to look at the County website for possible jobs. Def. SMF at ¶ 117. Plaintiff looked for jobs on the County website and forwarded the jobs she found to Director Holmes, but she contends that the only jobs she was offered were the short-term job with BOC and the job at the Water Department that conflicted with her schedule. Def. SMF at ¶ 118; Pl. SMF at ¶ 85.

On July 31, 2018, Plaintiff informed Ms. Holmes that she noticed a part-time position at Senior Services. Def. SMF at ¶ 119. On August 3, 2018, Plaintiff requested an update from Ms. Holmes on a possible position at the Senior Services Center, and Ms. Holmes requested that Plaintiff provide a phone number so the Division Manager of Senior Services could contact Plaintiff regarding her availability. Def. SMF at ¶¶ 120-21. According to Ms. Holmes, when an on-call administrator position becomes available, active on-call administrators are contacted and asked about their availability. Def. SMF at ¶ 122. Talent Management does not get involved in who a department hires, but will let a department head know that an

applicant has applied for a position. Def. SMF at ¶ 123. The department head has the option to interview the on-call administrator and makes the final decision whether to accept the administrator into their department. Def. SMF at ¶ 124.

The investigation by the Rockdale County Sheriff's Office did not really begin until summer of 2018. Def. SMF at ¶ 93. Lt. Harris with the Rockdale County Sheriff's Office contacted Judge Aten to schedule a time for an investigator to meet with Judge Aten's staff. Def. SMF at ¶ 94. According to Defendant Hall, Lt. Harris had asked if there was anyone at Magistrate Court who could speak on Defendant Hall's behalf. Def. SMF at ¶ 95. According to Hall, Lt. Harris advised her he was sending an investigator to Magistrate Court to speak with the individuals named by Defendant Hall. Def. SMF at ¶ 96. Judge Aten was on the bench at the time the investigator came to Magistrate Court. Def. SMF at ¶ 97. On August 20, 2018, the Rockdale County Sheriff's Department completed its investigation and concluded that there was evidence of a hostile work environment, and Defendant Hall was reprimanded. Pl. SMF at ¶¶ 86-87. On September 7, 2018, Defendant Hall resigned from the Rockdale County Sheriff's Office. Pl. SMF at ¶ 90.

On or about September 30, 2018, Plaintiff filed a claim for unemployment with the Georgia Department of Labor. Def. SMF at ¶ 125; Pl. SMF at ¶ 88. On or about October 31, 2018, the County appealed the decision allowing Plaintiff to collect unemployment, noting Plaintiff had not been let go from employment, but

remained on the active list of on-call administrators. Def. SMF at ¶ 126; Pl. SMF at ¶ 89. On December 4, 2018, a hearing was held before an administrative hearing officer, and after the hearing, it was determined that although Plaintiff had not been offered work, she remained employed. Def. SMF at ¶¶ 127-28. It was noted at the hearing that Plaintiff had not contacted the County after August 3, 2018, regarding returning to work after her release from her physician. Def. SMF at ¶ 129.

According to Plaintiff, she continued to look at jobs with the County into 2019 and claims that she applied for a total of two to three. Def. SMF at ¶ 130. Plaintiff has not been in contact with anyone at the County since the hearing on her unemployment claim, and she was never offered her job back at the Magistrate Court, even after Defendant Hall resigned from the Sheriff's Office. Def. SMF at ¶ 131; Pl. SMF at ¶ 93. On April 17, 2019, Plaintiff and several other on-call administration employees were removed from active on-call status with the County due to inactivity for at least six months. Def. SMF at ¶ 132; Pl. SMF at ¶ 94.

## II.    DISCUSSION

### A.    *Summary Judgment Standard*

Summary judgment is authorized when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of

demonstrating the absence of a genuine dispute as to any material fact. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 175 (1970); *Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir. 1984). The movant carries this burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The court must view the evidence and all factual inferences in the light most favorable to the nonmoving party.

Once the moving party has adequately supported its motion, the nonmoving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *Id.* An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 249. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Moreover, for factual issues to be genuine, they must have a real basis in the record.

*Matsushita*, 475 U.S. at 587. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259.

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed facts. *See Anderson*, 477 U.S. at 249; *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. Applicable substantive law identifies those facts that are material and those that are not. *Anderson*, 477 U.S. at 248. Disputed facts that do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment. *Id.*

B.    *Plaintiff's Claims*

In the Second Amended Complaint, Plaintiff asserts six substantive counts. *See* Sec. Amend. Compl. [25]. In Count I, she asserts a claim for sexual harassment in violation of Title VII. *Id*. at ¶¶ 71-81. She alleges that she was subjected to sexual harassment and a sexually hostile work environment by Defendant Hall, which the

County and Judge Aten knew about and failed to take immediate and appropriate corrective action, and for which the County and Judge Aten are liable. *Id*. at ¶¶ 74-77.

In Count II, Plaintiff asserts a claim for retaliation in violation of Title VII. *Id*. at ¶¶ 82-88. She alleges that she engaged in a protected activity under Title VII by making complaints of sexual harassment, and because of her complaints, she has not "been given any other job opportunities although there are open positions that she is qualified for and has effectively been terminated in retaliation for engaging in protected activity by complaining of and opposing the sexual harassment." *Id*. at ¶ 84. She alleges that the "true reason" that she has not been allowed to return to work is retaliation against her for making complaints of sexual harassment and retaliation. *Id*. at ¶ 85. She claims that the County's and Judge Aten's actions constitute unlawful retaliation in violation of Title VII. *Id*. at ¶ 86.

In Counts III and IV, Plaintiff asserts a claim for "assault and battery."[4] *Id*. at ¶¶ 89-94. Plaintiff alleges that she "endured actions that led her to reasonably anticipate and fear that Defendant Hall would engage in unwanted touching and sexual conduct toward her which was unwelcome and without consent," and that Hall "repeatedly assaulted and battered" her while conducting business for the

---

[4] Plaintiff does not identify which specific claim is asserted in Count III and which claim is asserted in Count IV. *See* Sec. Am. Compl. at ¶¶ 89-94.

County and Judge Aten. *Id*. at ¶¶ 90-91. She claims that Hall engaged in "unwanted touching and sexually charged conduct toward her that was offensive, unwelcome, and without consent." *Id*. at ¶ 92. She further claims that Hall battered her at the workplace controlled by the County and Judge Aten and they knew of Hall's sexual harassment and the existence of a hostile work environment. *Id*. at ¶ 93.

In Counts V and VI, Plaintiff asserts a claim for "negligent supervision and negligent retention."[5] *Id*. at ¶¶ 95-99. She alleges that the County and Judge Aten beached their legal duty of care to exercise reasonable care and prudence in the hiring, supervision, and retention of their employees. *Id*. at ¶ 96. She claims that the County and Judge Aten knew that Hall had sexually assaulted and battered her and subjected her to sexually harassing comments and behavior, but failed to take prompt remedial action to protect her from Hall's conduct. *Id*. at ¶¶ 97-98. She claims that, as a result of the Defendants' negligent supervision and retention, she suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress. *Id*. at ¶ 99.

On July 15, 2020, the District Court dismissed some of Plaintiff's claims. *See* Order [69]. In particular, it dismissed Count I, Plaintiff's claim of sexual harassment in violation of Title VII, as asserted against the County, Defendant Hall, and Judge

---

[5] Plaintiff does not identify which specific claim is asserted in Count V and which claim is asserted in Count VI. *See* Sec. Am. Compl. at ¶¶ 95-99.

Aten in her individual capacity. *See id*. at 9-10, 11-12. It dismissed Count II, Plaintiff's claim of retaliation under Title VII, as asserted against Defendant Hall and Judge Aten in her individual capacity. *See id*. at 11-12. Finally, it dismissed all of Plaintiff's state-law claims as asserted against the County and Judge Aten in both her official and individual capacity, and dismissed Plaintiff's claims of negligent supervision and negligent retention as asserted against Defendant Hall. *See id*. at 13-14.

As a result, the claims remaining in this case are: Count I, Plaintiff's Title VII claim of sexual harassment against Judge Aten in her official capacity as Rockdale County Magistrate Court Chief Magistrate Judge; Count II, Plaintiff's Title VII claim of retaliation against Rockdale County and Judge Aten in her official capacity as Rockdale County Magistrate Court Chief Magistrate Judge; and Counts III and IV, Plaintiff's claim of assault and battery, solely against Defendant Hall.[6] Because only the County and Judge Aten have filed motions for summary judgment, the Court discusses only Plaintiff's Title VII claims against the County and Judge Aten herein.

---

[6] Defendant Hall has not filed a motion for summary judgment on Plaintiff's claim of assault and battery.

1.      Plaintiff's Claim of Sexual Harassment against Judge Aten

As discussed, in Count I of the Second Amended Complaint, Plaintiff asserts a claim for sexual harassment in violation of Title VII. Sec. Amend. Compl. [25] at ¶¶ 71-81. She alleges that she was subjected to sexual harassment and a sexually hostile work environment by Defendant Hall, which the County and Judge Aten knew about and failed to take immediate and appropriate corrective action, and for which the County and Judge Aten are liable. *Id.* at ¶¶ 74-77. Although her claims of sexual harassment against Rockdale County, and against Judge Aten in her individual capacity, have been dismissed, Judge Aten has moved for summary judgment as to the claim against her in her official capacity.[7]

For claims of sexual harassment, an employer is liable for a violation of Title VII based on sexual harassment when a plaintiff establishes that she was harassed on the basis of her sex, and that the harassing conduct "unreasonably interferes with an employee's job performance by creating a hostile, intimidating, or

---

[7] In Plaintiff's brief, she states that she "dismisses whatever sexual harassment claims she has against Rockdale County or Rockdale County Magistrate Court." Pl. Br. [117] at 2 n.1. Plaintiff's sexual harassment claim against Rockdale County, however, was previously dismissed on July 15, 2020. *See* Order [69]. Moreover, Plaintiff has not sued the Magistrate Court but Judge Aten in her official capacity as Rockdale County Magistrate Court Chief Magistrate Judge, and it is not clear whether Plaintiff intends to dismiss her claim of sexual harassment against Judge Aten. In any event, the Court finds that, even if Plaintiff did not intend to dismiss her claim of sexual harassment against Judge Aten, Judge Aten is entitled to summary judgment on such claim. *See* discussion, *infra.*

offensive work environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65

(1986). As the United States Supreme Court has stated:

> [T]he language of Title VII is not limited to "economic" or "tangible" discrimination. The phrase "terms, conditions, or privileges of employment" evinces a congressional intent to "'strike at the entire spectrum of disparate treatment of men and women'" in employment.

*Meritor Sav. Bank*, 477 U.S. at 64 (citations omitted). Thus, Title VII grants

employees the right to work in an environment free from discriminatory

intimidation, ridicule, and insult. *Id.* at 65.

In order to establish a *prima facie* case for a Title VII claim against an

employer for sexual harassment or a sexually hostile work environment, a plaintiff

must show that: (1) she belongs to a protected group; (2) she was subjected to

unwelcome harassment; (3) the harassment was based on sex (or race or another

protected class under Title VII); (4) the harassment was sufficiently severe or

pervasive to alter the terms and conditions of employment; and (5) there is a basis

for holding the employer liable for the harassment either directly or indirectly. *See*

*Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 808 (11th Cir. 2010) (*en*

*banc*); *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir. 2003); *Miller v.*

*Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Mendoza v.*

*Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (*en banc*); *Cross v. Alabama*, 49

F.3d 1490, 1504 (11th Cir. 1995); *Henson v. City of Dundee*, 682 F.2d 897, 903-05

(11th Cir. 1982); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998);

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

Demonstrating the fourth element of a *prima facie* case of a hostile work environment requires the plaintiff to show that the work environment was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). As the Supreme Court has stated, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (citation omitted). Thus, the alleged harassing conduct must be "extreme" to amount to a change in the terms and conditions of employment, and the "ordinary tribulations of the workplace" such as "sporadic use of abusive language, . . . jokes, and occasional teasing" are not enough—since Title VII is not a "general civility code." *Faragher*, 524 U.S. at 788.

In evaluating whether a reasonable person would find conduct to be sufficiently severe or pervasive, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998); *see also Mendoza*, 195 F.3d at 1246 ("courts should examine

the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment."). Thus, a court must consider the "totality of the circumstances" in determining whether a hostile environment is severe or pervasive enough to be actionable under Title VII; it must consider not only the frequency of the incidents alleged but also the gravity of those incidents. *Harris*, 510 U.S. at 23; *Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1511 (11th Cir. 1989). Other factors that are relevant are whether the offensive conduct is physically intimidating or humiliating, and whether it unreasonably interferes with plaintiff's work performance. *Harris*, 510 U.S. at 23.

For the fifth element of the *prima facie* case, a plaintiff must establish that there is a basis for holding the employer liable for the harassment either directly or indirectly. In *Vance v. Ball State University*, 570 U.S. 421 (2013), the Supreme Court held that the "status of the harasser" as a supervisor or co-worker of the plaintiff is a significant factor in determining whether the employer may be held liable for the alleged harassment.

> Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's

harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. Under this framework, therefore, it matters whether a harasser is a "supervisor" or simply a co-worker.

*Vance*, 570 U.S. at 424 (emphasis added, internal citations omitted).

When the alleged sexual harasser is the plaintiff's supervisor with actual authority over the plaintiff, the employer may be liable even if it did not have knowledge of the allegedly harassing behavior, unless the employer raises and establishes an affirmative defense. *See Faragher*, 524 U.S. at 806-07; *Ellerth*, 524 U.S. at 762-65. An employer may be entitled to assert an affirmative defense if the plaintiff has shown that the alleged harasser was a supervisor but the harassment did not result in the supervisor's taking a tangible employment action against the plaintiff as a result of the sexual harassment. *See Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765; *see also Penn. State Police v. Suders*, 542 U.S. 129, 143 (2004); *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1246 (11th Cir. 2004) ("When we talk about tangible employment action and hostile environment, what we are or should be talking about are the two alternative ways a plaintiff may establish a basis for the employer's vicarious liability, which is the fifth factor of a Title VII sexual harassment claim.").

Whether an alleged harasser is an employee's supervisor depends on the scope of the harasser's actual authority, rather than her title or self-perception. *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 422 (11th Cir. 1999); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1033 (7th Cir. 1998). As a matter of law, a supervisor is someone with "significant control" over an employee, who has "power to hire, fire, demote, promote, transfer, or discipline" him or her. *Parkins*, 163 F.3d at 1034; *see also Joens v. John Morrell & Co.*, 354 F.3d 938, 940 (8th Cir. 2004); *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178 (6th Cir. 1992).

When an alleged harasser is the plaintiff's co-worker, however, the employer is only liable when the plaintiff establishes that the employer knew or should have known of the harassment, but did not take prompt remedial action to correct the situation. *See Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000) (citing *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982)); *see also Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir. 2003) (a plaintiff must show that the employer "had notice of the alleged harassment and failed to take immediate and appropriate corrective action"); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997) (requiring employers to take "prompt remedial actions" in response to harassment).

An employer's knowledge of the harassment may be established by actual or constructive notice. *Breda*, 222 F.3d at 889. Actual notice is established by proof

that management knew of the harassment, whereas constructive notice may be found when the harassment was so severe or pervasive that management should have known about it. *See Watson*, 324 F.3d at 1257; *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002). When an employer has a clear policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, then actual notice is established. *Watson*, 324 F.3d at 1259; *Breda*, 222 F.3d at 889; *see also Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1364 (11th Cir. 1999).

In this case, it appears to be undisputed that Defendant Hall was not Plaintiff's supervisor but at most, a co-worker who worked alongside Plaintiff in the Magistrate Court.[8] Thus, in order to hold Judge Aten liable under Title VII for the alleged sexual harassment by Defendant Hall, Plaintiff would be required to establish that Judge Aten, acting in her official capacity as Chief Magistrate Judge of the Magistrate Court, knew or should have known of the alleged harassment, but did not take prompt remedial action to stop the harassment. Judge Aten argues that, even if Plaintiff could establish all the other elements of a claim of sexual harassment,

---

[8] It is undisputed that, at all relevant times, Defendant Hall was employed by Rockdale County Sheriff's Office, working as a bailiff in the Magistrate Court, and was not technically an employee of the Magistrate Court. *See* Def. SMF at ¶ 56. The Court assumes for the purpose of this discussion that she could be considered a "co-worker" for the purpose of Plaintiff's sexual harassment claim.

Plaintiff cannot show that she was ever made aware of any alleged sexual harassment until after the alleged groping incident that occurred on April 12, 2018. Def. Aten Br. [105-1] at 12. The Court agrees. Although Plaintiff claims that Defendant Hall began sexually harassing her on or about February 14, 2018, the undisputed evidence shows that Judge Aten was not advised of the alleged harassment until Human Resources notified her of Plaintiff's complaint on April 12, 2018, and further, that Defendant Hall did not commit any acts of alleged harassment against Plaintiff after Judge Aten received notice of it.

As set forth above, Plaintiff contends that, on February 14, 2018, and February 20, 2018, Defendant Hall made allegedly offensive sexual comments and/or "sexual gestures" to Plaintiff. *See* Pl. SMF at ¶¶ 39-41. Plaintiff also contends that Defendant Hall started to greet her by "grabbing her and hugging her in a breast-to-breast hug" starting in late February of 2018. Pl. SMF at ¶ 42. Although Plaintiff sent an email to Judge Aten on February 21, 2018, requesting a meeting with her, it is undisputed that Plaintiff did not state in that email that she was being sexually harassed by Defendant Hall. Def. SMF at ¶¶ 61-62.

Plaintiff further alleges that, on April 12, 2018, Defendant Hall groped her breasts in front of another co-worker. *See* Pl. SMF at ¶¶ 43-45. Later that same day, Plaintiff made a complaint to Neni Valentine with the County Human Resources that Defendant Hall had sexually harassed her by groping her. Pl. SMF at ¶ 46; Def. SMF

34

at ¶¶ 64-65. Judge Aten received a phone call from Rockdale County Talent Management in the late afternoon of April 12, 2018, informing her of Plaintiff's complaint of sexual harassment against Defendant Hall. Def. SMF at ¶ 67; Pl. SMF at ¶ 49. Subsequently, on April 16, 2018, Plaintiff also sent an email to Judge Aten informing her directly for the first time that Plaintiff had allegedly been sexually harassed by Hall. Def. SMF at ¶ 86; Pl. SMF at ¶ 58. After April 12, 2018, however, Plaintiff never again worked in the Magistrate Court. Pl. SMF at ¶¶ 59-60.

Based on these undisputed facts, Judge Aten argues that "Plaintiff cannot show [that] Judge Aten knew or should have known of any alleged sexual harassment by Defendant Hall." Def. Aten Br. at 14. Significantly, Plaintiff fails to respond to this argument in her brief. *See* Pl. Br. [117] at 2 n.1 (Plaintiff states only that she "dismisses whatever sexual harassment claims she has against Rockdale County or Rockdale County Magistrate Court"). For that reason, the Court deems Plaintiff's claim of sexual harassment against Judge Aten to be abandoned. *See B.T. by & through Jackson v. Battle*, No. 21-10318, 2021 WL 4147087, at *5 (11th Cir. Sept. 13, 2021) (*per curiam*) (plaintiff's "failure to address [a] claim at all in his response brief other than in a heading shows abandonment"); *Clark v. City of Atlanta, Ga.*, 544 F. App'x 848, 855 (11th Cir. 2013) (per curiam) ("district court . . . properly treated as abandoned . . . claims, which were alleged in the complaint, but not addressed in opposition to the motion for summary judgment"); *Gordon v.*

*Starwood Hotels & Resorts Worldwide, Inc.*, 821 F. Supp. 2d 1308, 1316 (N.D. Ga. 2011) (defendant entitled to summary judgment on certain claims because plaintiff "abandoned the claims by failing to address them in response to Defendant's Motion for Summary Judgment"); *Burnette v. Northside Hosp.*, 342 F.Supp.2d 1128, 1140 (N.D. Ga. 2004) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party."); *see also Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (*en banc*) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned").[9]

---

[9] The undersigned notes that abandonment of claims should not be presumed in every instance. As other courts have explained, "[w]here a party wholly fails to respond to a summary judgment motion, the district court must make sure that it nonetheless is appropriate to enter summary judgment against the party that did not respond; in contrast, where the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned." *Rossi v. Fulton Cty., Ga.*, No. 1:10-CV-4254-RWS-AJB, 2013 WL 1213243, at *13 n.8 (N.D. Ga. Feb. 13, 2013), *report and rec. adopted sub nom. Rossi v. Fulton Cty. Bd. of Assessors/Fulton Cty. Tax Assessors Off.*, No. 1:10-CV-4254-RWS, 2013 WL 1213139 (N.D. Ga. Mar. 22, 2013); *see also Powell v. Am. Remediation & Env't, Inc.*, 61 F. Supp. 3d 1244, 1252 n.9 (S.D. Ala. 2014) (citing *Rossi* approach with approval and deeming claim abandoned on summary judgment), *aff'd*, 618 F. App'x 974 (11th Cir. 2015) (*per curiam*). Following this approach, the undersigned finds it appropriate to treat Plaintiff's sexual harassment claim against Judge Aten as abandoned, as Plaintiff has chosen to respond only to Defendants' arguments regarding her claim of retaliation in Count II. *See* Pl. Br. [117].

Furthermore, even if Plaintiff had not abandoned her claim of sexual harassment, the undersigned agrees with Judge Aten that summary judgment is appropriate on this claim because Plaintiff has failed to present any evidence that Judge Aten knew or should have known about the alleged harassment by Defendant Hall, but failed to take any remedial action. The undisputed evidence shows that Judge Aten was not informed about the alleged harassment until April 12, 2018, after Plaintiff complained to Rockdale County Human Resources, and Plaintiff has presented no evidence of any alleged harassment after that date. Thus, the Court finds that Plaintiff has failed to show that Judge Aten had either actual or constructive notice of Hall's sexual harassment of Plaintiff at any time prior to April 12, 2018.[10]

Accordingly, the undersigned **RECOMMENDS** that Judge Aten's Motion for Summary Judgment [105] be **GRANTED** as to Count I, and that judgment be entered in favor of Judge Aten on Plaintiff's Title VII claim of sexual harassment, as asserted against Judge Aten in her official capacity.

---

[10] Because the Court finds that Judge Aten is entitled to summary judgment as to this claim, the Court declines to address in detail her additional argument that she was not Plaintiff's "employer" under Title VII because the Magistrate Court did have fifteen or more employees during the relevant time period. *See* Def. Aten Br. at 10-12. As discussed *infra*, however, the undersigned finds that Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether Judge Aten and Rockdale County were Plaintiff's joint employers for the purpose of her Title VII claims.

2.       Plaintiff's Claim of Retaliation

In Count II of the Second Amended Complaint, Plaintiff asserts a claim for retaliation in violation of Title VII. Sec. Amend. Compl. [25] at ¶¶ 82-88. She alleges that she engaged in a protected activity under Title VII by making complaints of sexual harassment, and because of her complaints, she has not "been given any other job opportunities although there are open positions that she is qualified for and has effectively been terminated in retaliation for engaging in protected activity by complaining of and opposing the sexual harassment." *Id.* at ¶ 84. She alleges that the "true reason" that she has not been allowed to return to work is retaliation against her for making complaints of sexual harassment and retaliation. *Id.* at ¶ 85. She claims that the County's and Judge Aten's actions constitute unlawful retaliation in violation of Title VII. *Id.* at ¶ 86.

a.       Standards of Proof under Title VII

Title VII also acts to shield employees from retaliation for certain protected practices. Specifically, the statute provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee or applicant] has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

38

For retaliation claims that rely on circumstantial evidence, courts use the burden-shifting analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1277 (11th Cir. 2021) (*per curiam*) (citing *Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020)). Under that framework, a plaintiff must first establish a *prima facie* case of retaliation. *Id*. To establish a *prima facie* case of illegal retaliation under 42 U.S.C. § 2000e-3(a), a plaintiff must show that: (1) she engaged in a protected activity or expression; (2) she received an adverse employment action, and (3) there was a causal link between the protected expression and the adverse action. *Id.* (citing *Johnson,* 948 F.3d at 1325); *see also Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998); *Simmons v. Camden Cty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985).

The Supreme Court has held that the anti-retaliation provision of Title VII covers a broader scope of conduct than does the anti-discrimination provision. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("[W]e conclude that Title VII's substantive provision and its anti-retaliation provision are not coterminous. The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."); *see also Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008) ("Under the holding of *Burlington*, the type of employer conduct considered actionable has been broadened from that which

adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related.").

Nevertheless, the Supreme Court reiterated the requirement that the adverse action cannot be merely a trivial annoyance, but must be significant, in order to be actionable as unlawful retaliation.

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. . . . We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace. An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.

*Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67–68 (internal quotes and citations omitted). Thus, even under this more lenient standard, an allegedly retaliatory act must be more than "trivial" and must still "produce some injury or harm" to be considered materially adverse. *See AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014).

In order to demonstrate a causal link between a protected activity and an adverse action, a plaintiff is not required to establish "the sort of logical connection that would justify a prescription that the protected participation in fact prompted the

adverse action. Such a connection would rise to the level of direct evidence of discrimination, shifting the burden of persuasion to the defendant." *Simmons v. Camden Cty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985); *see also Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 920 (11th Cir. 1993). Rather, to establish a causal connection, a plaintiff was traditionally required to show that the relevant decision maker was aware of the plaintiff's protected conduct, and that the protected activity and the adverse action "were not wholly unrelated." *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal citation and quotations omitted).

The Supreme Court has ruled, however, that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). This standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*; *see also Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (*en banc*). "In other words, 'a plaintiff must prove that had [he or] she not [engaged in the protected conduct], [he or] she would not have been fired.'" *Gogel*, 967 F.3d at 1135 (quoting *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018)).

A plaintiff may establish an inference of causation by showing that she suffered the adverse action shortly after she engaged in the protected activity.

*Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *Bass v. Bd. of Cty. Comm'rs*, 256 F.3d 1095, 1119 (11th Cir. 2001); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). For a plaintiff to establish such a link by mere temporal relationship, however, the challenged decision must follow very closely after the protected expression to support the logical inference that the two events were related. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close.") (internal quotes omitted). Moreover, mere temporal proximity is not always sufficient, without evidence showing that the relevant supervisors who took the adverse action against a plaintiff knew of the plaintiff's protected activity. *See Castillo v. Roche Labs.*, 467 F. App'x 859, 862 (11th Cir. 2012) ("A plaintiff satisfies this element [of causation] by showing that the decision-maker knew of the protected activity, and that a close temporal proximity existed between this awareness and the adverse employment action.") (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)).

"Once the *prima facie* case is established, it creates a 'presumption that the adverse action was the product of an intent to retaliate.' The burden of production then shifts to the employer to rebut the presumption by articulating a legitimate, non-

discriminatory reason for the employment action." *Gogel*, 967 F.3d at 1135 (quoting *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009)). If the employer does so, "the burden shifts back to the plaintiff to show that the [employer's] stated reason was not the real reason for its decision but rather, served as a pretext for retaliation." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1277 (11th Cir. 2021) (*per curiam*). "[T]o establish pretext at the summary judgment stage, a plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Gogel*, 967 F.3d at 1136 (quoting *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)). "[A] reason is not pretext for [retaliation] unless it is shown both that the reason was false, and that [retaliation] was the real reason." *Id.* (quoting *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007)) (internal quotation marks omitted).

b.     Plaintiff's Claim against Rockdale County

Rockdale County argues that it is entitled to summary judgment on Plaintiff's Title VII claim of retaliation for two reasons. First, it argues that Plaintiff cannot show that the County was Plaintiff's employer under Title VII until Plaintiff was hired to work for the County Board of Commissioners ("BOC"). County Br. [106-1] at 12-17. Second, the County argues, even if it were deemed to be Plaintiff's

employer while she worked at the Magistrate Court, she cannot show that the County took any adverse action against her that was retaliatory. *Id*. at 17-23.

> (1)    Was the County Plaintiff's Employer?

Rockdale County first argues that Plaintiff's claim of retaliation under Title VII must be dismissed because Plaintiff cannot show that the County was Plaintiff's employer under Title VII until Plaintiff was hired to work for the County Board of Commissioners ("BOC"). County Br. at 12-17. According to the County, the County and the Magistrate Court are separate entities under the law, and Plaintiff has failed to present sufficient evidence to rebut the general presumption that separate entities should not be aggregated for purposes of Title VII. *Id*. at 12.

As discussed, Title VII provides that it unlawful for "an *employer* to discriminate against any of his employees or applicants for employment . . . because [the employee or applicant] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). Thus, a claim for workplace discrimination or retaliation under Title VII may only be brought by an employee against his or her employer or prospective employer. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242–43 (11th Cir. 1998). In the Eleventh Circuit, consistent with the purposes of Title VII, courts should generally interpret the term "employer" liberally. *Virgo v. Riviera Beach Assocs., Ltd*., 30 F.3d 1350,

1359 (11th Cir. 1994); *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987).

A plaintiff's status as an employee under Title VII is a question of federal law. *Peppers v. Cobb Cty., Georgia*, 835 F.3d 1289, 1296 (11th Cir. 2016). In order to decide whether an entity is a qualified employer, the Eleventh Circuit asks this basic question: "who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999) (*en banc*). This determination requires consideration of the totality of the employment relationship. *Peppers*, 835 F.3d at 1297. Among the basic factors that the courts consider are: (1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment. *Id*.

The Eleventh Circuit has identified three circumstances in which it is appropriate to aggregate multiple entities as employers. *Lyes*, 166 F.3d at 1341. First, under the "single employer" or "integrated enterprise" test, two employers may be counted together if they are "highly integrated with respect to ownership and operations." *Id.* Second, under the "joint employer" test, two entities may be aggregated if the entities contract with each other for the performance of some task and one company retains sufficient control over the terms and conditions of

employment of the other company's employees. *Id.* Third, under the "agency" test, a third party may be treated as an agent of the employer and aggregated with it when the employer delegates sufficient control of some traditional rights over employees to the third party. *Id*.

In *Peppers*, the Eleventh Circuit addressed whether Cobb County, Georgia could be sued under Title VII by an employee who had worked for the District Attorney's Office of Cobb County. The plaintiff in *Peppers* was paid from county funds in paychecks issued by the county, and the county had the authority to approve the budget of the district attorney's office, including individual salaries. *Peppers*, 835 F.3d at 1300. Nevertheless, the Eleventh Circuit affirmed the district court's decision to grant summary judgment in favor of Cobb County on the ground that it was not the plaintiff's employer as a matter of law, at least for purposes of Title VII liability. The court considered the parties' evidence in depth to determine whether the County and District Attorney's Office could be aggregated under either the "single employer" test or the "joint employer" test, ultimately concluding that they could not be aggregated under either test.

Under the "single employer" test, first, citing its earlier holding in *Lyes*, the court explained that there is a presumption, rooted in comity, federalism, and respect for a state's abilities to create and define its own institutions, that "where a state legislative body creates a public entity and declares it to be separate and distinct, that

the public entity is indeed separate and distinct" from other governmental

subdivisions. *See id.* at 1298–99.

> The reason for the presumption against aggregation where governmental subdivisions are concerned is rooted in comity, federalism, and respect for a state's abilities to create and define its own institutions. As we explained, "We should not brush aside a state's own distinctions between its governmental subdivisions, because even ostensibly formal distinctions are part of a government's ability to shape its own institutions within constitutional bounds, and we are obligated to respect a state's right to do so." Because there are "few things closer to the core of a state's political being and its sovereignty than the authority and right to define itself and its institutions in relation to each other," we must act with particular care and hesitation when we are asked to override those distinctions the state has adopted.

*Id.* (quoting *Lyes*, 166 F.3d at 1344).

Thus, in order to aggregate two government subdivisions under the "single

employer" test, a plaintiff is required to present "strong evidence" sufficient to

"clearly overcome" the presumption that the entities are separate, either by showing

that the governmental entity was created or maintained for the purpose of evading

the federal employment discrimination laws, or by showing "factors manifestly

indicating that the public entities are so closely interrelated with respect to control

of the <u>fundamental</u> aspects of the employment relationship that they should be

counted together under Title VII." *Id.* (quoting *Lyes*, 166 F.3d at 1345) (emphasis

added in *Peppers*). The relevant factors include "centralized control of operations;

authority to hire, transfer, promote, discipline, or discharge; authority to establish

work schedules or direct assignments; and the obligations to pay the plaintiff." *Id.*

47

The "source of a governmental entity's funding," however, "is a poor indication of whether it should be aggregated with another." *Id.*

The Eleventh Circuit in *Peppers* explained that the District Attorney's Office and the county it served were legally distinct governmental entities, and that under the Georgia Constitution and statutory code Cobb County lacked the authority to supervise, hire, or fire employees of the district attorney. *Id.* at 1297–99. The court in *Peppers* therefore found that the presumption of separation clearly applied, and that Cobb County and the Cobb District Attorney's Office could not be aggregated under the "single employer" test. *Id.* at 1299.

Turning to the "joint employer" test, the Eleventh Circuit explained that the analysis was somewhat different because the "joint employer" test "does not completely disregard the state's decision to separate its governmental subdivisions," meaning that the concerns of comity and federalism are lessened. *See id.* Still, the court cautioned, those concerns "do not completely vanish," and the court must still "act with care and circumspection" before aggregating separate state actors as joint employers. *Id.* at 1299–1300.

Under the "joint employer" test, although framed in terms of private employers, an entity may be aggregated with another if:

> while contracting in good faith with an otherwise independent company, [it] has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the

other employer. Thus the joint employer concept recognizes that the
business entities involved are in fact separate but that they share or
co-determine those matters governing the essential terms and
conditions of employment.

*Id.* at 1300 (quoting *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1360 (11th
Cir. 1994)).

Applying this test to the case before it, the Eleventh Circuit in *Peppers*
concluded that Cobb County could not be aggregated with the Cobb District
Attorney's Office under the "joint employer" test, either:

Peppers has not adduced any evidence to establish that the County and
the District Attorney acted as his joint employers with regard to his total
employment situation. Again, the County had no involvement in
recruiting or hiring Peppers as a criminal investigator, creating his job
title, establishing his job responsibilities and pay, regulating his work
environment, or supervising him in any way. The County's
involvement with investigators working in the District Attorney's
Office was essentially to act as a paymaster—its role consisted solely
and entirely of issuing paychecks, ensuring investigators received
proper benefits, distributing annual pay raises when requested and
approved by the District Attorney, and approving the District
Attorney's budget. The long and short of it is that the District Attorney
alone filled nearly all of the roles traditionally filled by an employer.
Indeed, Cobb County had no more control over the nature, power, and
functions of the investigators than it had the authority to determine
which cases and prosecutions the District Attorney's Office ought to
pursue. Thus, looking at a "conventional master-servant relationship as
understood by common-law agency doctrine," [*see Clackamas
Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444–445
(2003)] the signs point obviously (and solely) toward the District
Attorney being Peppers's employer.

*Id.*

In this case, Rockdale County argues that Plaintiff's evidence is not sufficient to overcome the presumption that the County and the Magistrate Court are two separate entities because, it argues, under Georgia law, the County is prohibited from exercising control over court personnel. *See* County Br. at 13 (citing Ga. Const. of 1983, Art. IX, § II, ¶ I(c) ("The power granted to counties…shall *not* be construed to extend to the following matters… [a]ction[s] affecting any court or the personnel thereof" (emphasis added)); Ga. Const. Art. VI, § I, ¶ I ("The judicial power of the state shall be vested exclusively in the following classes of courts…magistrate courts")).

The County argues further that, pursuant to Georgia statutes, the chief magistrate judge of the magistrate court has the sole authority to make personnel and/or administrative decisions over magistrate court. County Br. at 14 (citing O.C.G.A. §§ 15-10-106 ("Personnel so appointed shall serve at the pleasure of the chief magistrate")). According to the County, the fact that Plaintiff may have received her paycheck from the County, or was subject to its civil service rules, is insufficient to show the County had the ability to control Plaintiff's employment. *Id.* at 15 (citing *Peppers*, 835 F.3d at 1298).

More importantly, the County argues, it was Judge Aten who hired Plaintiff into the Magistrate Court on-call administrator position and it was Judge Aten who had the ability to terminate Plaintiff's employment. *Id.* at 14. According to the

County, Ms. Minor and Ms. Carreker, who were Magistrate Court personnel, set Plaintiff's schedule and assigned Plaintiff's duties. *Id*. Thus, the County contends, the Magistrate Court controlled all fundamental aspects of Plaintiff's employment, such as her day-to-day schedule, her specific duties, discipline, and whether her assignment continued or ended, and the County was not her employer until it hired Plaintiff into the BOC position. *Id*. at 17.

In response, Plaintiff argues, "the Magistrate Court and Rockdale County both seek to avoid liability by contending that, with respect to Plaintiff, neither entity was an 'employer' under Title VII during part or all of Plaintiff's employment." Pl. Br. [117] at 18. Contrary to Defendants' arguments, Plaintiff, contends, both entities were her employer at all relevant times, as "the record evidence overwhelmingly supports a finding that Rockdale County was an employer of Plaintiff throughout her entire employment, and that both Rockdale County and the Magistrate Court employed Plaintiff under either a single employer theory, or, alternatively, as joint employers, during the time Plaintiff was assigned to the Magistrate Court." *Id*. at 19.

First, Plaintiff argues, it is "well established" that public entities, even if legally distinct, may nevertheless be aggregated together for purposes of Title VII if the plaintiff can show that they both employed the plaintiff under either a "single employer" or "joint employer" theory. *Id*. at 20 (citing *Peppers*, 835 F.3d at 1299). Importantly, Plaintiff argues, under a joint employer theory, "joint employer status

is determined by focusing on the entities' relationships to a given employee or class of employees. The joint employment relationship, in other words, is *employee-specific*." *Id*. at 21 (citing *Peppers*, 835 F.3d at 1300) (emphasis added by Plaintiff).

Second, Plaintiff argues, the record evidence in this case "overwhelmingly demonstrates" that Rockdale County and the Magistrate Court both controlled Plaintiff's employment to the point that they functioned as a single employer or, alternatively, as joint employers. *Id*. at 22. Plaintiff argues that "Rockdale County, either in concert with the Magistrate Court or alone, directed and controlled virtually all of the fundamental and essential terms and conditions of Plaintiff's employment, and was intricately involved in the aspects of Plaintiff's employment which gave rise to her claims." *Id*. Plaintiff lists the following examples:

- Plaintiff applied for a job with Rockdale County via the Rockdale County Government website.

- Plaintiff first met with Ms. Rassifer [sic] of Rockdale County's Talent Management Department (hereinafter "County HR"), who told Plaintiff that what Rockdale County had available was an "on-call administrator" position that would float among many county positions.

- The "On-Call Administrator" position is not specific to the Magistrate Court as the County has On Call Administrators in many parts of the County.

- The On-Call Administrator job position, which set forth Plaintiff's job duties, including her duties during her placement at the Magistrate Court, was created by the County.

• Plaintiff was told that she could transfer or "float" within Rockdale County government as an "on-call administrator" and that she could also apply for promotions within Rockdale County.

• Plaintiff's references were checked by County HR[.]

• Plaintiff received an offer letter from Ms. Rassifer [sic] (County HR) with a date to go to Rockdale County orientation.

• Plaintiff was given an employee handbook from Rockdale County, and Rockdale County policies and the Rockdale County employee handbook applied to Plaintiff's employment.

• Plaintiff's Employee Handbook or "Standards of Conduct" given to her by Rockdale County HR referred to Plaintiff as a Rockdale County Employee.

• After accepting her placement at the Magistrate Court, Plaintiff attended orientation for Rockdale County employees and trained on the Rockdale County employment policies and procedures.

• Rockdale County employee dress code applied to Plaintiff.

• Rockdale County has overarching policies that dictate how Plaintiff's supervisors should manage her. Specifically, evaluation criteria used by the Magistrate Court to measure Plaintiff's performance was developed by the County.

• Rockdale County had the right to search Plaintiff when she was placed with the Magistrate Court.

• Plaintiff was told during orientation that if she felt sexually harassed, or if she had a problem, that she should contact County HR.

• Plaintiff was drug tested by Rockdale County HR.

• Plaintiff was told by County HR that she would be guaranteed 29 hours a week if she accepted the position.

• Plaintiff was always paid by Rockdale County.

• All potential benefits applicable to Plaintiff were provided by Rockdale County.

- Plaintiff in fact filed a complaint of sexual harassment with Rockdale County, and Rockdale County investigated it.

- Plaintiff was told that she was initially placed at the Magistrate Court, but that the County might place her in other departments, and in fact she was placed in other departments by Rockdale County, including the BOC and the Water Department.

- Rockdale County sets all computer policies applicable to employees in the Magistrate Court, and the County department of public affairs established a media policy applicable to Plaintiff when she worked at Magistrate Court.

- All property that Plaintiff used at work when she worked in the Magistrate Court was provided by the County.

- If Plaintiff wanted to speak in public, she needed permission from the Chairman of Rockdale County.

- The Magistrate Court and Judge Aten are being defended and insured under an insurance policy issued solely to Rockdale County.

- Plaintiff was insured for workers compensation injuries as a County employee while she was placed with the Magistrate Court.

- Rockdale County was the sole employer named in Plaintiff's EEOC Charge and the County responded to the EEOC without raising an argument that it did not employ Plaintiff.

- Rockdale County was the sole employer named in Plaintiff's claim for unemployment benefits, and, in response to the Georgia DOL, did not raise any argument that it did not employ Plaintiff.

*Id*. at 22-25 (citations omitted).

But more importantly, Plaintiff argues, although the County contends that it did not have the authority to fire Plaintiff, and only Judge Aten had that authority, "the record is undisputed that the Magistrate Court did not fire Plaintiff or even ask to have her removed from the Magistrate Court." *Id*. at 25-26. Instead, Plaintiff

contends, the County admits in its brief that Ms. Holmes, acting on behalf of the County, made the decision to remove Plaintiff from the Magistrate Court after she complained about Defendant's Hall sexual harassment, and Ms. Holmes removed Plaintiff from her position over Plaintiff's express objection. *See id*. at 26 (citing Def. Br. at 19). It was only after Ms. Holmes made the decision to remove her from her position, Plaintiff contends, that the County moved Plaintiff to the BOC, and the County even marked that move on her personnel perform as a "transfer," rather than a "new hire." *Id*. Thus, Plaintiff argues, the personnel form reflects that she had been employed by Rockdale County the entire time. *Id*.

Moreover, Plaintiff argues, courts have repeatedly found, under facts "much less compelling" than this case, that plaintiffs may present evidence that creates a genuine dispute of material fact regarding whether two separate public entities may properly be aggregated under Title VII using either a single or joint employer theory. *Id*. at 26-27 (citing *Hall v. Franklin County*, 2015 WL 5769232, at *7 (M.D. Ga. Sept. 30, 2015); *Mack v. Alabama Dept. of Human Resources*, 201 F.Supp.2d 1196 (M.D Ala. 2002); *Hughes v. Fulton County*, No. 1:16-cv-01912-CAP (N.D. Ga. Mar. 28, 2019) (copy attached as Exhibit A)).

Upon review of all the facts and evidence submitted by the parties, and viewing all disputed facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented sufficient evidence to create a genuine issue of material fact

as to whether Rockdale County and the Magistrate Court jointly employed the Plaintiff during her employment as an on-call administrator. The County is generally correct that, because the County and the Magistrate Court are legally separate public entities, the Court should "begin with the presumption that . . . [they] should not be aggregated for purposes of Title VII." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999) (*en banc*). Nevertheless, the Eleventh Circuit has expressly held that this presumption may be rebutted by a plaintiff. *See Peppers v. Cobb Cty., Georgia*, 835 F.3d 1289, 1298 (11th Cir. 2016) ("If a 'fact finder reasonably could conclude the plaintiff has clearly overcome the presumption' that the entities are separate, then the entities will be considered a single employer for purposes of Title VII.") (quoting *Lyes*, 166 F.3d at 1345).

As discussed, the Eleventh Circuit has explained that, under the "single employer" or "integrated enterprise" test, two employers may be counted together if they are "highly integrated with respect to ownership and operations." *Lyes*, 166 F.3d at 1341. Under the "joint employer" test, two entities may be aggregated if the entities contract with each other for the performance of some task and one company retains sufficient control over the terms and conditions of employment of the other company's employees. *Id*. While it is not clear that Plaintiff has presented sufficient evidence to show that Rockdale County and the Magistrate Court were so "highly integrated" that they meet the "single employer" test, the Court finds that, under all

56

the circumstances presented in this case, Plaintiff has presented sufficient evidence to create a genuine dispute of fact as to whether Rockdale County retained sufficient control over Plaintiff's employment so that the County and the Magistrate Court jointly employed Plaintiff.

As Plaintiff argues, the County undermines its own argument by contradicting itself in its brief. Although it argues that, under Georgia law, "the County is prohibited from exercising control over court personnel," it appears to admit that the decision to remove Plaintiff from her position with the Magistrate Court was made by the County, not Judge Aten. *See* County Br. at 13, 18-19. As the County admits, once it received Plaintiff's complaint of sexual harassment by Defendant Hall, it believed "the only option" that it had was to remove Plaintiff from her position:

> The County was without any power to remove either Defendant Hall or Judge Aten from the Magistrate Court. The only option was to remove Plaintiff from her alleged harasser and from the alleged hostile work environment.

*Id*. at 18-19 (citations omitted).

While the County neglects to include the name of the person who made the decision to "remove" Plaintiff from her position, Plaintiff's evidence suggests that the individual who made that decision was Toni Holmes, Director of Talent Management (or Human Resources) for the County. The undisputed evidence indicates that, on April 12, 2018, Plaintiff sent a written statement regarding her complaint of sexual harassment in an email to Ms. Valentine, who worked for Talent

Management for the County, and in that statement, Plaintiff stated that she wanted to keep her job as an on-call administrator, although she did not know if she could work in the same department as her alleged harasser. Pl. SMF at ¶ 48; Def. SMF at ¶ 70; Pl. Dep., Ex. 1, 1A. Plaintiff further contends that she "specifically and consistently requested that she be placed back in the Magistrate Court." Pl. Resp. SMF at ¶ 72; Pl. Dep. at 77 ("I told Director Holmes I wanted to go back to my job."). Plaintiff also informed Ms. Valentine that she planned a "tentative return to work" on Wednesday, April 18, 2018. Def. SMF at ¶ 73; Pl. SMF at ¶ 53.

While it is undisputed that Plaintiff met with Ms. Holmes on April 17 or April 18 to discuss her employment, the parties dispute the substance of that conversation. Def. SMF at ¶ 88; Pl. SMF at ¶ 71; Pl. Dep. at 77-78. According to Defendants, Ms. Holmes "recommended" to Plaintiff that she not return to Magistrate Court due to her complaints about Defendant Hall and Judge Aten. Def. SMF at ¶ 89; Pl. SMF at ¶ 68; Pl. Dep. at 77; Holmes Dep. at 120-21. According to Plaintiff, however, Ms. Holmes did not simply "recommend" that Plaintiff not return to Magistrate Court, she made the decision for Plaintiff, although Plaintiff expressly told her that she wanted to return to her job in the Magistrate Court. Pl. Resp. SMF at ¶ 89; Pl. SMF at ¶¶ 66-67, 71-72; Pl. Dep. at 77-78 ("I told Director Holmes I wanted to go back to my job. . . . Director Holmes informed me that that was not her recommendation, that she was going to find particular other departments for me to

work in, but she didn't think it would be a good idea for me to go back."). Plaintiff also informed Ms. Holmes that there was an on-call administration position in the Juvenile Court to which she could transfer, and Ms. Holmes said that she would look into it, but the evidence indicates that she never took any steps to do so, or at least she admits that there is no documentation that she ever contacted the Juvenile Court on behalf of Plaintiff. Pl. SMF at ¶¶ 74, 80.

Although Plaintiff claims that she told Ms. Holmes that she wanted to return to her position at the Magistrate Court, it is undisputed that Ms. Holmes told Judge Aten that Plaintiff did not want to return to Magistrate Court. Pl. SMF at ¶ 57; Def. SMF at ¶ 91. Plaintiff never returned to her position at the Magistrate Court after April 12, 2018, and nobody from the County Human Resources department ever discussed with Plaintiff even the possibility of her returning to Magistrate Court. Pl. SMF at ¶¶ 59, 63. On April 20, 2018, however, Plaintiff emailed Ms. Holmes requesting to be returned to Magistrate Court on April 25, 2018, as an on-call administrator "until other departments" had need of Plaintiff. Def. SMF at ¶ 102; Pl. SMF at ¶ 75. Finally, although the County refrains from identifying the person who made the decision to remove Plaintiff from her position, it does not dispute that Judge Aten testified that she did not make the decision to have Plaintiff removed from Magistrate Court. Pl. SMF at ¶ 62; Aten Dep. at 214.

In its reply brief, the County argues that "Director Holmes had no authority to place Plaintiff in another position, had no authority to discipline Plaintiff, had no authority over Plaintiff's schedule, and had no authority to terminate Plaintiff's position with the Magistrate Court." County Reply Br. [125] at 3. It also argues that "[n]either Director Holmes nor the County was involved in Plaintiff's removal from Magistrate Court." *Id.* at 6. But as discussed, Judge Aten testified that she did not make the decision to remove Plaintiff from her position at the Magistrate Court, and the County has not presented any evidence indicating who else may have made that decision. And, as also discussed, Plaintiff has testified that she repeatedly asked to return to her position. Indeed, in Plaintiff's initial statement to Ms. Valentine, she wrote, "I want to keep my job in On-Call Administration with Rockdale County Government." *See* Pl. Dep., Ex. 1A. It also remains undisputed that Plaintiff was never permitted to return to her job with the Magistrate Court, even after Defendant Hall resigned her position. Thus, regardless of whether Ms. Holmes had the "authority" to remove Plaintiff from her position at the Magistrate Court, Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether Ms. Holmes actually did so in this case.

In sum, viewing all the evidence in the light most favorable to Plaintiff, the Court finds that she has shown that she repeatedly told Ms. Holmes that she wanted to return to her job at the Magistrate Court, but Ms. Holmes made the decision to

remove her from the position, because, as the County admits in its brief, Ms. Holmes believed that the "only option" the County had was to remove Plaintiff from her position. County Br. at 19. The County has presented no evidence that Judge Aten made the decision to remove Plaintiff from her position, or even recommended that Plaintiff be removed from her position. Indeed, the County has presented no evidence that Judge Aten was even *consulted* on the decision to remove Plaintiff from her position at the Magistrate Court. Instead, the County admits that it was Ms. Holmes who told Judge Aten that Plaintiff did not want to return to her job at the Magistrate Court, not the other way around. This admission contradicts, or at least undermines, the County's position that it had no authority to make personnel decisions over Magistrate Court employees. Regardless of whether the County had the legal authority to remove Plaintiff from her position, Plaintiff has presented sufficient evidence, at a minimum, to create a genuine issue of fact as to whether Ms. Holmes, the Director of Talent Management for the County, was the individual who made the decision to remove her from her position over Plaintiff's repeated pleas to return to her job.

Accordingly, the undersigned finds that Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether the County retained the authority to exercise significant control over the terms and conditions of her employment, including her job assignments, hours, pay, and promotional

opportunities, as well as the authority to remove her from her position. For that reason, Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether the County and Judge Aten were her joint employers during her employment as an on-call administrator with the Magistrate Court for the purpose of her Title VII claims. *See Hughes v. Fulton County*, No. 1:16-cv-01912-CAP (N.D. Ga. Mar. 28, 2019) (Pl. Ex. A) ("The court finds that [testimony that] Fulton County maintained some level of control of the OPD [Office of the Public Defender], the plaintiff's reliance on Fulton County's policies and grievance procedure, and Fulton County's failure to assert its non-employer status in the face of an EEOC charge are sufficient to demonstrate at least a question of fact as to whether Fulton County jointly employed the plaintiff with [OPD].").

(2)    Did the County Retaliate against Plaintiff?

As discussed, to establish a *prima facie* case of illegal retaliation under 42 U.S.C. § 2000e-3(a), a plaintiff must show that: (1) she engaged in a protected activity or expression; (2) she received an adverse employment action, and (3) there was a causal link between the protected expression and the adverse action. *See, e.g., Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998); *Simmons v. Camden Cty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985). In this case, Rockdale County appears to concede that Plaintiff engaged in a protected activity when she complained about sexual harassment from Defendant Hall on or

62

about April 12, 2018. The County argues, however, that, even if it were deemed to be Plaintiff's employer or her joint employer with Judge Aten while Plaintiff worked at the Magistrate Court, Plaintiff's claim of retaliation fails because she cannot show that the County took any adverse employment action against her that was retaliatory. County Br. at 17-23.

The County's argument appears to be largely based on its argument that it was not Plaintiff's employer. *See id*. Although the County concedes it became Plaintiff's employer after she began working for the BOC, it attempts to insulate itself entirely from liability for Plaintiff's removal from her position at the Magistrate Court, and focuses instead on Plaintiff's failure to be hired in other positions with the County after she was removed from her position at the Magistrate Court. *See id*. at 22 ("As there is no evidence that any of the hiring managers had knowledge of Plaintiff's complaint of sexual harassment, Plaintiff cannot show that the County retaliated when the hiring managers decided not to hire Plaintiff.").

But as discussed, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether the County was a joint employer of Plaintiff, along with Judge Aten, while she worked at the Magistrate Court. In particular, the Court finds that Plaintiff has presented sufficient to create a genuine issue of fact as to whether it was Ms. Holmes—not Judge Aten—who made the decision to remove Plaintiff

from her position. Indeed, although the County does not identify Ms. Holmes by name, it admits that the County played a role in removing Plaintiff from her position because its "only option was to remove Plaintiff from her alleged harasser."[11] County Br. at 19.

In arguing that Plaintiff cannot show that the County took any retaliatory adverse action against her, the County focuses on events that occurred after Plaintiff was removed from her position at the Magistrate Court because there can be no real dispute that Plaintiff's removal from her position was an adverse employment action, under all the facts and circumstances presented.[12] Plaintiff has presented evidence that she was told by the County that she would be guaranteed 29 hours a week while working at the Magistrate Court. Def. SMF at ¶ 14; Pl. SMF at ¶ 24. Although Plaintiff's hours at Magistrate Court varied, Plaintiff testified that her schedule was 8:30 a.m. to 2:30 p.m. Monday through Thursday and every other Friday. Def. SMF at ¶ 37; Pl. SMF at ¶ 38; Pl. Dep. at 33. After Plaintiff was transferred to a position working with the BOC on April 27, 2018, however, Plaintiff worked only four hours

---

[11] The County does not explain why it did not have the "option" to ask Judge Aten to request that Defendant Hall be removed or transferred from her courtroom, although it is undisputed that judges are permitted to give input on whether they want a deputy as a bailiff. Def. SMF at ¶ 58.

[12] Had the County transferred Plaintiff to an equivalent position with no loss of salary or benefits, it could have made the argument that Plaintiff's involuntary removal from her position at the Magistrate Court was not an adverse employment action. But that is not what happened in this case.

a week covering for a receptionist on a lunch break. Def. SMF at ¶ 105; Pl. SMF at ¶ 77.

The County argues that Ms. Holmes was unaware of Plaintiff's schedule with the Magistrate Court and unaware of the Magistrate Court's guarantee that she would be working 29 hours a week.[13]  County Br. at 20. The County has cited no authority, however, that a decisionmaker's alleged lack of knowledge about a plaintiff's schedule or hours has any bearing on whether an employment action is adverse for the purpose of a retaliation claim. The undisputed evidence reflects that Plaintiff was removed from her position—involuntarily, she claims—and placed in a position with drastically reduced hours and pay. Plaintiff's removal from her job was clearly an adverse employment action under these circumstances.

Thus, Plaintiff has presented evidence that, on April 12, 2018, she complained about sexual harassment from Defendant Hall to the County Human Resources department, and the County, with the apparent agreement or at least cooperation from Judge Aten, immediately removed Plaintiff from her position at the Magistrate Court—over Plaintiff's express objections—and later transferred her to a position with drastically reduced hours and pay. Under these circumstances, the Court finds

---

[13] Similarly, Judge Aten argues that she was unaware of where Plaintiff had been placed after she left the Magistrate Court, "much less the hours assigned." Aten Br. at 17.

that Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether she engaged in a protected activity or expression and received an adverse employment action; and whether there was a causal link between the protected expression and the adverse action. For that reason, Plaintiff has presented a *prima facie* case of retaliation under Title VII.

As discussed, once a plaintiff has established a *prima facie* case of retaliation, it creates a presumption that the adverse action was the product of an intent to retaliate. The burden of production then shifts to the employer to rebut that presumption by articulating a legitimate, non-retaliatory reason for the employment action. *See Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (*en banc*); *see also Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). Thus, in order for the County to show that it is entitled to summary judgment on Plaintiff's claim of retaliation, it must present a legitimate reason for the decision to remove Plaintiff from her position at the Magistrate Court that was unrelated to her complaint about sexual harassment by Defendant Hall.

Plaintiff argues in her response that the County has articulated no legitimate reason for the decision to remove Plaintiff from her position. *See* Pl. Br. at 35. Plaintiff contends that "the County admits that the decision was made (over Plaintiff's objection) *because* Plaintiff complained of sexual harassment." *Id.* (emphasis in original) (citing County Br. at 19). To be sure, the County states in its

brief that, after Plaintiff complained about Defendant Hall's alleged harassment, its "only option was to remove Plaintiff from her alleged harasser." County Br. at 19.

But while it does not expressly articulate its legitimate reason for removing Plaintiff from her Magistrate Court position, the County argues in its reply that "Plaintiff on multiple occasions expressed a desire to be put into a position outside of Magistrate Court," and that Ms. Holmes "reasonably believe[ed] Plaintiff wanted to move." County Reply Br. [125] at 9. Thus, the Court is faced with a classic dispute of fact: while Plaintiff claims that she told Ms. Holmes that she wanted to stay in her job at the Magistrate Court, the County contends that Plaintiff asked to be moved, and that Ms. Holmes "reasonably" believed that she wanted to move. For that reason, the County is not entitled to summary judgment on Plaintiff's claim of retaliation.

Accordingly, the undersigned **RECOMMENDS** that Rockdale County's Motion for Summary Judgment [106] be **DENIED** as to Count II, Plaintiff's claim of retaliation in violation of Title VII.

### c.    Plaintiff's Claim against Judge Aten

Although Judge Aten concedes that she was Plaintiff's employer, she also argues that Plaintiff cannot show that Judge Aten unlawfully retaliated against her for complaining about harassment. Aten Br. at 15-18. According to Judge Aten, when she first learned of Plaintiff's complaint of sexual harassment, "she reached out to Talent Management for advice on how to properly separate non-employee

67

Defendant Hall from Plaintiff." *Id*. at 17. Judge Aten contends that she "was informed that Plaintiff had indicated a desire to move to a department within Rockdale County and that Rockdale County was taking steps to accommodate Plaintiff's request." *Id*. Judge Aten admits that "Plaintiff reached out to Judge Aten after the incident to return to Magistrate Court," but in response, she contends that she "again reached out to Talent Management for advice only to learn that other positions within Rockdale County had been discussed with Plaintiff and Plaintiff did not wish to return to Magistrate Court." *Id*. Judge Aten contends that she was not even aware of where Plaintiff had been placed, much less the hours assigned. *Id*. Thus, she argues, because she "was under the belief that Plaintiff wished to move to a department within Rockdale County and that Plaintiff's request was being accommodated, Plaintiff cannot show that Judge Aten retaliated against her." *Id*.

For the same reasons discussed above in connection with Plaintiff's claim of retaliation against Rockdale County, the Court finds that Judge Aten has also failed to show that she is entitled to summary judgment on this claim. Plaintiff has shown that she complained about sexual harassment to the County, and then almost immediately, she was removed from her position at the Magistrate Court despite her repeated objections and requests to return to her job. Thus, Plaintiff has presented a *prima facie* case of retaliation under Title VII.

Judge Aten, like the County, relies on her contention that she "was under the belief that Plaintiff wished to move," as her reason for removing Plaintiff from her position at the Magistrate Court, but as discussed, this is a classic dispute of fact. Plaintiff claims that she told both Ms. Holmes and Judge Aten that she wanted to return to the Magistrate Court, but her request was denied. Plaintiff expressly contends that, on April 16, 2018, she sent an email to Judge Aten stating that Plaintiff wanted to return to Magistrate Court on April 23, 2018, and this appears to be undisputed by Defendants. Def. SMF at ¶ 86; Pl. SMF at ¶ 58.

Accordingly, the undersigned **RECOMMENDS** that Judge Aten's Motion for Summary Judgment [105] be **DENIED** as to Count II, Plaintiff's Title VII claim of retaliation, as asserted against Judge Aten in her official capacity.

### III.    RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that Judge Aten's Motion for Summary Judgment [105] be **GRANTED IN PART, DENIED IN PART**. **IT IS RECOMMENDED** that Judge Aten's Motion for Summary Judgment [105] be **GRANTED** as to Count I, Plaintiff's Title VII claim of sexual harassment, as asserted against Judge Aten in her official capacity, and that summary judgment be entered in favor of Judge Aten on that claim. **IT IS FURTHER RECOMMENDED** that Judge Aten's Motion for Summary Judgment [105] be

**DENIED** as to Count II, Plaintiff's Title VII claim of retaliation, as asserted against Judge Aten in her official capacity.

**IT IS FURTHER RECOMMENDED** that Rockdale County's Motion for Summary Judgment [106] be **DENIED**.

If these recommendations are adopted in full, this case would proceed only on Count II, Plaintiff's Title VII claim of retaliation against the County and Judge Aten in her official capacity, and Counts III and IV, Plaintiff's claim of assault and battery against Defendant Hall.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 27th day of May, 2022.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE