# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Yvonne Thomas,

         Plaintiff,

                  Case No. 1:19-cv-2430-MLB

v.

Rockdale County, et al.,

         Defendants.

_____/

## **OPINION & ORDER**

Plaintiff Yvonne Thomas sued Defendants Rockdale County and Rockdale County Chief Magistrate Judge Phinia Aten for alleged sexual harassment and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.[1]  Plaintiff also asserted state-law claims of assault and battery against Defendant Dedra Hall, who worked as a bailiff in the Rockdale County courthouse.  Defendants Rockdale County and Judge

---

[1] The Court previously dismissed Plaintiff's Title VII claims for sexual harassment against Rockdale County, Judge Aten in her individual capacity, and Dedra Hall; Plaintiff's Title VII retaliation claim against Dedra Hall; Plaintiff's assault and battery claims against Judge Aten and Rockdale County; and Plaintiff's negligent supervision and retention claims against Rockdale County and Judge Aten.  (Dkt. 69.)

Aten moved for summary judgment.  (Dkts. 105; 106.)  The Magistrate Judge issued a Report and Recommendation ("R&R"), saying the Court should deny Rockdale County's motion in full and deny Judge Aten's motion in part and grant it in part.  (Dkt. 130.)  Defendants filed objections.  (Dkt. 136.)  The Court adopts the R&R in part, denies Rockdale County's motion, and grants Judge Aten's motion in full.

## I.   Background[2]

Defendant Judge Aten is the Chief Magistrate of Rockdale County Magistrate Court.  (Dkts. 117-1 ¶ 2; 124 ¶ 1.)  On November 6, 2017, Plaintiff began working in the court as a part time, on-call administrator.  (Dkt. 117-1 ¶ 21-22.)  The written job description said someone in her position would work on an as-needed basis, but Plaintiff contends the county guaranteed her 29 hours per week.  (Dkts. 117-1 ¶ 14; 124 ¶ 24.)  Though Plaintiff's hours varied, Plaintiff contends she worked from 8:30

---

[2] The Magistrate Judge set out the relevant facts in his R&R.  (Dkt. 130 at 2-21.)  The Court finds no plain error in the Magistrate Judge's application of Local Rule 56.1(B) and adopts the facts as stated by him, unless discussed herein.

a.m. to 2:30 p.m. Monday through Thursday and every other Friday.  (D. Resp. SMF ¶ 38.)[3]

## A.    Plaintiff's Sexual Harassment and Complaint

Defendant Dedra Hall, a bailiff in Judge Aten's courtroom, allegedly began sexually harassing Plaintiff on February 14, 2018.  (Dkts. 117-1 ¶ 54; 117-2 ¶ 39.)  About a week later, Plaintiff requested a meeting with Judge Aten but did not tell the judge about Defendant Hall's misconduct.  (Dkt. 117-1 ¶ 61-62.)[4]

On April 12, 2018, Defendant Hall groped Plaintiff's breasts three times, despite Plaintiff's protests.   (Dkt. 117-1 ¶ 63.)   On that day, Plaintiff called Neni Valentine (a human resources employee) to make a sexual harassment complaint against Defendant Hall.  (Dkts. 117-1 ¶ 64; 124 ¶ 46.)  When Ms. Valentine asked whether Plaintiff was leaving her job, Plaintiff said she was not, she was coming back, and she wanted her job. (Dkt. 124 ¶ 47.)  In a subsequent written statement to Ms. Valentine,

---

[3] Defendants agree Plaintiff's schedule was such at one point but add that Plaintiff's schedule changed during her time at the Magistrate Court.

[4] Plaintiff objects because "the facts therein are not material" without further specification.  But they are.  And Plaintiff acknowledged the factual assertion without presenting contrary evidence.

Plaintiff wrote that she wished to keep her job as an on-call administrator but did not know whether she could work in the same department as her alleged harasser.  (Dkt. 117-1 ¶ 71.)[5]  While Plaintiff told Ms. Valentine that her "friends and family" encouraged her to transfer departments out of fear of retaliation, she contends she "specifically and consistently requested that she be placed back with the Magistrate Court." (Dkt. 117-1 ¶¶ 71-72.)  Plaintiff further told Ms. Valentine that she planned to return to work on April 18, 2018.  (Dkts. 117-1 ¶ 73; 124 ¶ 53.)

### B.   Plaintiff's Removal from the Magistrate Court

Rockdale County Talent Management (that is, Ms. Valentine's office) told Judge Aten about Plaintiff's sexual harassment complaint against Defendant Hall on April 12, 2018.  (Dkts. 117-1 ¶ 67; 124 ¶ 49.)  That was the first time Judge Aten learned of any alleged sexual misconduct against Plaintiff.  (Dkt. 117-1 ¶ 63.)  On April 13, an investigator told Judge Aten Plaintiff had requested a transfer from the Magistrate Court to elsewhere in the County.  (Dkt. 117-1 ¶¶ 77-78.)  While Plaintiff does not dispute this, she further alleges Toni Holmes (the

---

[5] Plaintiff adds that she never definitively stated she wanted to transfer, and her friends and family were concerned of retaliation.

Director of Rockdale County Talent Management) was the one who told Judge Aten Plaintiff did not wish to return to the Magistrate Court. (Dkt. 117-2 ¶ 57.)

It is undisputed that Judge Aten did not remove Plaintiff from her position. (Dkts. 117-2 ¶ 62; 124 ¶ 62).[6]  On April 16, 2018, Plaintiff sent an email to Judge Aten saying that "due to the egregious act of physical and sexual harassments" against her on April 12, she would return to work at the Magistrate Court on April 23, 2018.  (Dkts. 117-1 ¶ 86; 50-11.)   On April 17, 2018, Judge Aten contacted Ms. Holmes about Plaintiff's return.  Ms. Holmes told Judge Aten that Plaintiff did not wish to return and that Ms. Holmes had discussed other assignments in Rockdale County with Plaintiff.  (Dkt. 117-1 ¶ 87, 91.)  Judge Aten had no further contact with Plaintiff and did not discuss Plaintiff's complaint or allegations other than with County investigators.  (Dkts. 105-2 ¶ 92; 117-1 ¶ 92.)

---

[6] Defendants object to this statement "to the extent that it merely makes a legal conclusion and misstates the law and the facts" but cite no contrary evidence.  And that is what Judge Aten said during her deposition. (Dkt. 119-1 at 215:22-216:1.)

Plaintiff spoke to Ms. Holmes on April 18, 2018. (Dkts. 117-1 ¶ 88; 124 ¶ 71.)  According to Defendants, Ms. Homes recommended Plaintiff not return to the Magistrate Court. (Dkt. 105-2 ¶ 89.)  Plaintiff contends Ms. Holmes made the decision for her, even though Plaintiff expressly requested to return to that job. (Dkts. 117-1 ¶ 89; 117-2 ¶ 71.)[7]

## C.   Plaintiff's Search for Other County Jobs

At the April 18 meeting, Plaintiff informed Ms. Holmes of an open position at the Juvenile Court to which she could transfer, and Ms. Holmes agreed to look into it. (Dkt. 124 ¶ 74.)  On April 25, 2018, Plaintiff emailed Ms. Holmes asking to go back to the Magistrate Court until other positions became available.  (Dkt. 117-1 ¶ 102.)  Plaintiff then began working in a temporary position for the Rockdale County Board of Commissioners ("BOC") for four hours per week. (Dkts. 117-1 ¶ 105; 124 ¶ 77.)  On April 30, 2018, Plaintiff again emailed Ms. Holmes asking to

---

[7] Defendants object to Plaintiff's claim as an incomplete statement of fact.  Defendants contend Ms. Holmes recommended that Plaintiff not return to the Magistrate Court, and Plaintiff then suggested transferring to another on-call position. (Dkt. 124 ¶ 71.)  Defendant does not challenge Plaintiff's assertion that her first, repeated request was to return to Magistrate Court.

work the position at the Juvenile Court that Plaintiff had previously mentioned. (Dkt. 124 ¶ 79.) There is no evidence Ms. Holmes contacted the Juvenile Court on Plaintiff's behalf. (Dkt. 124 ¶ 80.)

Due to childcare and healthcare matters, Plaintiff was unable to work until July 23, 2018. (Dkt. 117-1 ¶ 109, ¶¶ 115-116.) When Plaintiff told Ms. Holmes she could resume work, Ms. Holmes advised Plaintiff to search the county website for jobs. (Dkt. 117-1 ¶ 117.) Plaintiff did so and forwarded possible jobs to Ms. Holmes but did not get another position. (Dkt. 124 ¶ 85.) On July 31, Plaintiff informed Ms. Holmes of an open position with Senior Services. (Dkt. 117-1 ¶ 119.) Ms. Holmes collected Plaintiff's contact information so Senior Services could contact Plaintiff. (Dkt. 117-1 ¶ 120-121.)[8]

---

[8] Facts pertaining to Plaintiff's job search after her removal from the Magistrate Court may appear irrelevant to the case in its current form. This is because Plaintiff's theory of what constituted the adverse employment action has changed throughout the case. In the Complaint, Plaintiff alleged that she was not given "any other job opportunities although there [were] open positions that she is qualified for." (Dkt. 25 ¶ 84.) Now, however, the alleged adverse employment action is Plaintiff's removal from the Magistrate Court and her transfer to the BOC. Given the centrality of the post-removal facts in prior briefings, the Court acknowledges them here.

**D.    Plaintiff's Removal from County Employment**

On April 17, 2019, the County removed Plaintiff (and several other employees) from active on-call status due to inactivity.  (Dkts. 117-1 ¶ 132; 124 ¶ 94.)

## II.    Standard of Review

**A.    Report and Recommendation**

When a party objects to an R&R, the district court must determine de novo any part of the Magistrate's disposition that is the subject of a proper objection. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b).  "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to."  *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).  If an objection fails to identify specific findings or a specific basis for the objection, the Court need not consider it.  *See id.*

**B.    Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which

that party will bear the burden of proof at trial.'" *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186–87 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial responsibility of asserting the basis for his or her motion. *See Celotex Corp.*, 477 U.S. at 323. The movant is not, however, required to negate the non-movant's claim. Instead, the moving party may meet his burden by "'showing'—that is, pointing to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has carried its burden, the non-moving party must present competent evidence that there is a genuine issue for trial. *Id.* at 322.

The Court views all evidence and factual inferences in a light most favorable to the non-moving party. *See Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). But mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 248. "The requirement is that there be no *genuine* issue of *material* fact." *Id.*

The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.  Discussion

### A.    Sexual Harassment Claim

Plaintiff asserts a claim for sexual harassment in violation of Title VII against Judge Aten in her official capacity.  (Dkt. 25 ¶¶ 71–81.)  The R&R recommends granting Judge Aten's motion in regards to that claim because Plaintiff produced no evidence Judge Aten knew or should have known about the alleged harassment but failed to take any remedial action.  (Dkt. 130 at 37.)  Neither party objects.

"It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  But many district courts still do conduct a limited review of unobjected-to portions of an R&R, typically for clear error.  *See* Fed. R. Civ. P. 72(b) advisory committee's note (1983 addition) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the

record in order to accept the recommendation."). Even assuming that review is necessary here, the Court sees no clear error in the Magistrate Judge's recommendation. The Court thus grants summary judgment as to Plaintiff's sexual harassment claim.

### B.   Retaliation Claim

Plaintiff asserts a claim for retaliation in violation of Title VII against Defendants Judge Aten and Rockdale County. (Dkt. 25 ¶¶ 82–88.) Plaintiff claims that, due to her complaints of sexual harassment, she was not "been given any other job opportunities although there [were] open positions that she is qualified for and has effectively been terminated in retaliation." (Dkt. 25 ¶ 84.) Title VII provides that it is unlawful for "an *employer* to discriminate against any of his [or her] employees or applicants for employment . . . because [the employee or applicant] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e–3(a) (emphasis added); *Clark v. S. Broward Hosp. Dist.*, 601 F. App'x 886, 896 (11th Cir. 2015).

### 1.   Was Rockdale County Plaintiff's Employer

Title VII applies to employers. To decide whether an entity is an employer, the Eleventh Circuit asks "who (or which entity) is in control

of the fundamental aspects of the employment relationship that gave rise to the claim." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999). That determination requires consideration of factors such as "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment." *Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016). In the Eleventh Circuit, two entities may be aggregated as employers under three theories: single employer, joint employer, and agency. *Lyes*, 166 F.3d at 1341.

Plaintiff argues Rockdale County is her employer under either a single or joint employer theory.[9] The Magistrate Judge found there is a genuine dispute of fact as to whether the County retained sufficient control over Plaintiff's employment, such that the County and Magistrate Court jointly employed Plaintiff. (Dkt. 130 at 57, 62.) The County claims the Magistrate Judge was wrong because it had no authority over Plaintiff's employment status and, even if it did, it had no choice but to

---

[9] The Magistrate Judge found it is not clear whether Plaintiff has created a genuine dispute under the single employer test. (Dkt. 130 at 56.) As the Court finds Plaintiff has met her burden under the joint employer test, the Court does not explore the single-employer issue further.

remove her from the Magistrate Court.  The County says the undisputed evidence shows Plaintiff decided she wanted to stop working in the Magistrate Court and it had no control over whether any other entity decided to hire her.  (Dkt. 136 at 5.)[10]  The Court disagrees.

The County says, once it received Plaintiff's complaint of sexual harassment, it believed "the only option" it had was to remove Plaintiff from her position.  (Dkt. 106-1 at 18–19 ("The County was without any power to remove either Defendant Hall or Judge Aten from the Magistrate Court. The only option was to remove Plaintiff from her alleged harasser and from the alleged hostile work environment.").)  In making this assertion, the County essentially admits it had the authority to remove Plaintiff from her position at the courthouse and that it exercised that authority.  There is no other logical interpretation.  And, what does it really mean that the County thought it had no other option

_____

[10] To support this claim, Defendants allege Plaintiff requested to be removed from the Magistrate Court "for fear of retaliation and hostility." (Dkt. 136 at 11.)  In support of this allegation, the County cites only its statement of undisputed material facts without noting that Plaintiff hotly contested any assertion that she wanted to transfer away from the Magistrate Court.  According to Plaintiff, family and friends urged Plaintiff to leave out of fear of retaliation and hostility—but Plaintiff wished to stay.  (Dkt. 117-1 ¶¶ 71-72.)

but to move Plaintiff. Even if it could not order Defendant Hall's transfer to another location, it certainly could have sought it. Perhaps the County could have spoken with Judge Aten to seek her assistance with that move or to otherwise create a safe environment for Plaintiff to remain in the Courthouse. Surely the County could have done something. All of that is to say, the County's suggestion it had no other option is a hyperbolic statement to disguise the fact it made the decision to proceed in the way it did rather than trying something else. At least a jury could reach that conclusion from the evidence.

Plaintiff's evidence also suggests Ms. Holmes made the decision to remove Plaintiff from the courthouse. In Plaintiff's written complaint to Ms. Valentine on April 12, Plaintiff noted she wanted to keep her job. (Dkt. 117-1 ¶ 71.) Plaintiff testified that, during her April 18 meeting with Ms. Holmes, she told Ms. Holmes she wanted to go back to her job. (Dkt. 106-4 at 29.) Plaintiff also stated that Ms. Holmes decided for Plaintiff that she should leave her position with the Magistrate Court. (Dkt. 117-2 ¶ 72.) While the County does not dispute that the meeting occurred, it claims Ms. Holmes merely recommended that Plaintiff not

return to her position. (Dkt. 105-2 ¶ 89.) So, there is a factual dispute about this.

There is also evidence that, after Plaintiff identified the position at the Juvenile Court, Ms. Holmes never contacted the Juvenile Court to help Plaintiff get that job. (Dkt. 124 ¶ 74.) On April 20, Plaintiff emailed Ms. Holmes requesting to be returned to the Magistrate Court as an on-call administrator until other departments had a need for her. (Dkts. 117-1 ¶ 102; 124 ¶ 75.) But that did not happen. Finally, despite Plaintiff's alleged pleas to stay, Ms. Holmes told Judge Aten that Plaintiff did not want to return to the Magistrate Court. (Dkt. 117-2 ¶ 57.) And she never let Plaintiff go back. (Dkt. 124 ¶¶ 59, 63.)

Taken together, Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether Ms. Holmes removed Plaintiff *against Plaintiff's will.* Plaintiff has thus presented enough evidence to create a dispute as to whether the County retained authority to exercise significant control over the terms and conditions of her employment, as well as the authority to remove her from her position.[11] *Davis v. Fulton*

---

[11] While Plaintiff's evidence Ms. Holmes may have removed Plaintiff from her position is determinative, Plaintiff has also alleged other factors that suggest the County's authority over Plaintiff, including that Plaintiff's

*Cnty., Georgia,* 2020 WL 11191803 at *17 (N.D. Ga. Jan. 30, 2020), *discussing Hughes v. Fulton County*, No. 1:16-cv-01912-CAP at Dkt. 179 (N.D. Ga. Mar. 28, 2019) (Testimony that Fulton County maintained some level of control over the Office of Public Defender ("OPD") supports that Fulton County and the OPD jointly employed the plaintiff.)  The undisputed evidence that Judge Aten did not make the decision to remove Plaintiff from the courthouse strengthens Plaintiff's evidence as somebody must have done it.  (Dkts. 117-2 ¶¶ 57, 62; 105-2 ¶ 91.) Plaintiff has raised a genuine dispute as to whether Rockdale County jointly employed her.

### 2.   **Did Rockdale County Retaliate**

Plaintiff asserts a circumstantial case of retaliation discrimination under the burden-shifting framework set out in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  To take advantage of that rubric, Plaintiff was required to establish a prime facie case of discrimination by presenting evidence—among other things—that she received an adverse

---

position was created by the County, that Plaintiff could "float" among county positions, and that Plaintiff attended orientation for Rockdale County employees.  A full list of factors can be found in the Magistrate Judge's R&R.  (Dkt. 130 at 52-54.)

employment action and there was a causal link between the protected expression and the adverse action. *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012).[12]   Rockdale County concedes Plaintiff engaged in protected activity but argues she cannot show the County took any adverse employment action against her that was retaliatory. (Dkt. 106-1 at 17–23.)

First, the County argues that Plaintiff "abandoned" her job with the Magistrate Court, so the County did not take any adverse action. (Dkt. 136 at 11.)   The Court disagrees.   As already explained, Plaintiff has presented evidence that Ms. Holmes—acting for the County—decided against Plaintiff's repeated requests to return to Magistrate Court that Plaintiff should not go back there.   (Dkts. 117-2 ¶71; 124 ¶ 71.)

---

[12] Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of Title VII retaliation by showing (1) she engaged in protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal connection between the two. *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012).   The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1992).   A plaintiff must then rebut the defendant's alleged nondiscriminatory reason with evidence that the explanation is merely a pretext for retaliation—that is, that the proffered reason for the decision was not the true reason. *Id.*

Construing the evidence in the light most favorable to the Plaintiff, the Court cannot agree Plaintiff "abandoned" her job.

Second, the County argues it arranged for Plaintiff to interview for a job at the BOC and that Plaintiff accepted the new position. (Dkt. 136 at 11.) But that does not mean it did not take adverse action against her. An employment action is adverse if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). A reasonable jury could find that Plaintiff's removal from the Magistrate Court was adverse—the County's "offer" for Plaintiff to work at the BOC does not change that fact. Plaintiff has presented evidence she was told by the County she would be guaranteed 29 hours of work a week at the Magistrate Court. (Dkts. 117-1 ¶ 14; 124 ¶ 24.) While Plaintiff's hours varied, she testified her schedule was 8:30 a.m. to 2:30 p.m. Monday through Thursday and every other Friday. (Dkt. 124 ¶ 38.) By contrast, Plaintiff's position at the BOC was temporary, limited to four hours per week and had reduced pay. (Dkt. 117-2 ¶ 77.) *See Ambus v. AutoZoners, LLC*, 71 F. Supp. 3d 1280, 1303 (M.D. Ala. 2014) (Reduced hours and pay can be an adverse employment action.) The County's argument that the

18

move to BOC was merely an employment offer—rather than an employment action—holds little weight in light of the evidence that Plaintiff was removed from her job at the Magistrate Court against her will and given a position with far fewer hours available.

The County argues that, when Ms. Holmes was helping Plaintiff obtain the BOC job, Ms. Holmes was unaware of how many hours Plaintiff was working at the Magistrate Court. (Dkt. 136 at 12.) For all Ms. Holmes knew, it says, Plaintiff's job and the BOC was equivalent to her job at the Magistrate Court. (Dkt. 136 at 12-13.) Thus, relying on *Jefferson v. Burger King Corp.* and *Brungart v. BellSouth Telecommunications, Inc.*, the County contends Plaintiff's claim must fail. (*Id.* at 12–13.) *Jefferson*, however, stands for the general proposition that retaliation requires the employer to be motivated by a discriminatory or retaliatory animus. 505 F. App'x 830, 834 (11th Cir. 2013). While a decisionmaker cannot be motivated by something unknown to him or her, *BellSouth* only discusses the need for the decisionmaker to be aware of the protected conduct at the time of the adverse employment action. 231 F.3d 791, 799. Ms. Holmes was aware of Plaintiff's complaint. (Dkt. 117-1 ¶ 89; 124 ¶ 71.) And Rockdale

19

County has cited no authority, and the Court is aware of no authority, that a decisionmaker's alleged lack of knowledge about a plaintiff's hours has any bearing on a circumstantial retaliation claim.[13]  And, moreover, Plaintiff's proffered evidence that Ms. Holmes was unaware of how many hours Plaintiff was working at the Magistrate Court does not mean she was unaware the BOC job offered significantly fewer hours.  Defendant

---

[13] Plaintiff's case is based on *circumstantial* rather than *direct* evidence. By applying the *McDonnell-Douglas* framework to circumstantial retaliation claims, courts allow plaintiffs to *create a presumption* of discriminatory intent. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012).  Here, Plaintiff need not show Ms. Holmes knew the BOC position was inferior to the position at the Magistrate Court.  Rather, the second prong of *McDonnell-Douglas* requires Plaintiff to show the County's actions were in fact adverse. Plaintiff's evidence that she wished to remain with the Magistrate Court, the BOC position's decreased hours and pay, and Plaintiff's wish to leave the BOC position in favor of positions at the Juvenile Court or Senior Services establishes adversity.  The third prong, causation, requires that decisionmaker was aware of the *protected activity*, not that the employment action was adverse. *BellSouth*, 505 F. App'x at 834.  Finally, even if Ms. Holmes' knowledge was relevant to the adversity prong, Plaintiff has presented evidence she told Ms. Holmes she did not want to leave the Magistrate Court.  Once removed, Plaintiff has shown that she expressed dissatisfaction with her BOC job and wanted to work elsewhere.  Given this and the other facts cited by the Magistrate Judge (including that the BOC job offered fewer hours), Plaintiff has created a genuine dispute as to whether Ms. Holmes was aware the BOC position was inferior.  And, as already explained, Defendants' assertion of fact does not allege to the contrary.

has not cited evidence of that fact. (Defendants did not even argue that fact or factual implication before the Magistrate Judge.) Evidence of Plaintiff's removal from the Magistrate Court and placement in an inferior position was clearly an adverse action, or at least enough to create genuine dispute as to whether it was. And there is no doubt the move was made as a result of the complaint she raised.

Because Plaintiff has established a prima facie case of retaliation, it creates a presumption that the adverse action was the product of an intent to retaliate. The burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the action. *See Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020). If the employer does so, the burden shifts back to the plaintiff to show the employer's stated reason was pretext for retaliation. *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1277 (11th Cir. 2021). Here, the Magistrate Judge recommends denying summary judgment because there is a genuine dispute as to whether Plaintiff told Ms. Holmes that she wanted to stay in her job. (Dkt. 130 at 67.)

Defendants do not discuss burden-shifting in their objections, but the Court agrees with the Magistrate Judge's recommendation and

21

analysis on the matter.  The Magistrate Judge found that, while Rockdale County did "not expressly articulate its legitimate reason for removing Plaintiff from her Magistrate Court position, the County argues in its reply that 'Plaintiff on multiple occasions expressed a desire to be put into a position outside of Magistrate Court,' and that Ms. Holmes 'reasonably believe[ed] Plaintiff wanted to move.'" (Dkt. 130 at 67.)  While Plaintiff's wish to move may be a legitimate reason for the County's actions, the Court agrees that this case presents a "classic dispute of fact." (Dkt. 130 at 67.)  The County claims that Plaintiff asked to move, and that Ms. Holmes thus reasonably believed she wanted to do so.  (Dkt. 125 at 9.)  Plaintiff contends she told Ms. Holmes repeatedly she wanted to stay.  (Dkts. 117-2 ¶71; 124 ¶ 71.)  Plaintiff has thus created a genuine dispute as to whether the County's explanation is pretextual, and Rockdale County is not entitled to summary judgment on the retaliation claim.

## C.   Judge Aten

Judge Aten argues she is entitled to summary judgment on Plaintiff's retaliation claim because (1) she is not an employer for

purposes of Title VII[14], and (2) she was told, and thus believed, Plaintiff did not wish to return to the Magistrate Court.  (Dkt. 105 at 10-12, 17-18.)  The Magistrate Judge recommends denying summary judgment because on April 16 Plaintiff sent Judge Aten an email saying she intended to return to the court on April 23.  (Dkt. 130 at 69.)

The fact cited by the Magistrate Judge is undisputed.  On April 16, Plaintiff sent an email to Judge Aten saying that she wished to return to work on April 23.  (Dkt. 117-1 ¶86.)  But, it is also undisputed that Judge Aten reached out to Rockdale County Talent Management the very next day to talk about Plaintiff's return.  (Dkt. 117-1 ¶87.)  And it is undisputed that Ms. Holmes told Judge Aten she had spoken with Plaintiff and Plaintiff did ***not*** want to return to the Magistrate Court.  (Dkt. 117-1 ¶87, 91.)  Finally, it is undisputed that Judge Aten had no further communication with Plaintiff or anyone else (other than investigators) about the matter.  (Dkt. 117-1 ¶92.)

[14] Judge Aten does not raise this issue in her objections.  But this issue is resolved by the Court's finding that Plaintiff has raised genuine dispute as to whether the County and the Magistrate Court can be aggregated.

In the light of these facts, there is no evidence from which a jury could conclude Judge Aten played any role in the decision to transfer Plaintiff or was aware it had been done against her will.  Judge Aten is thus entitled to summary judgment on Plaintiff's retaliation claim.  She cannot be held accountable for Rockdale County's conduct when she had no involvement in the decision or knowledge of the circumstances.  *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1184 (11th Cir. 2003) (No liability for retaliation where Plaintiff could not show participation in or prior knowledge of the adverse action.)

## IV.   Conclusion

For the reasons discussed above, the Court **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation.  Specifically, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation as to Plaintiff's Title VII sexual harassment claim against Judge Aten in her official capacity.  The Court **ADOPTS** the Magistrate Judge's Report and Recommendation as to Plaintiff's Title VII retaliation claim against Rockdale County only.  The Court **GRANTS** Judge Aten's Motion for Summary Judgment (Dkt. 105).  The Court **DENIES** Rockdale County's Motion for Summary Judgement (Dkt. 106).   This case will proceed only

as to Count II against Rockdale County and Counts III and IV against

Defendant Dedra Hall.

**SO ORDERED** this 28th day of September, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE